## JOHN A. CAPLEN v. ROBERT H. COX.

### Decided March 12, 1906.

**1.—Contract of Partnership—False Representations.**

Where a person is inveigled by the false representations of another to become a partner with him, the court will rescind the contract of partnership at his instance, compel the repayment, with interest, of the amount put into the partnership and indemnify him against partnership debts; he, on the other hand, to account for whatever he may have received since his entry into the concern.

**2.—Representations—Scienter.**

One who makes representations as to a matter of fact, as distinguished from a matter of opinion, is bound by them, whether he had knowledge of the

fact or not, and will not be heard to say that the other party should not have trusted him.

### 3.—Evidence of Value Without Objection.

Where witnesses are allowed to testify as to value without objection at the time that the testimony should be confined to market value it is too late to raise the question after the trial.

### 4.—Additional Findings of Fact.

In the absence of a request for finding of other facts deemed material, an assignment of error raising this point will not be sustained.

Appeal from the District Court of Grimes County. Tried below before Hon. Gordon Boone.

*W. W. Meachum* and *S. S. Hanscom*, for appellant.—Appellee having failed to allege that appellant appropriated the stock of goods put into the partnership, and alleged by appellee to be of the value of $2,450.00, and failing to allege how or in what manner appellee was damaged by reason of appellant's false and fraudulent representations, and failing to allege that appellee was damaged and to what extent by reason of the difference between the stock, claimed by appellant to be of the value of $8,111.00, and its alleged true failure, and failing to allege why and to what extent appellee was damaged, and in what way he was damaged thereby, and failing to allege that but for said alleged false representations he would have made money instead of losing money thereby, and would not have been damaged, or that he could or would have obtained employment and to what extent and at what compensation, appellant's general demurrer should have been sustained. Holman v. Criswell, 13 Texas, 38; Lemmon v. Hanley, 28 Texas, 220, 225; Read v. Chambers, 45 S. W. Rep., 742, 744; O'Conner v. Smith, 84 Texas, 232; Fox v. Elston, 33 S. W. Rep., 749; Am. & Eng. Ency. of Law, vol. 8, pp. 632, 634, 635, 636; Encyclopedia of Pr. & Pldg., vol. 9, p. 696, par. 3; Grant v. Whittlesey, 42 Texas, 320, 322; Bremond v. McLean, 45 Texas, 10, 17 et seq.; Carson v. Houssels, 51 S. W. Rep., 290, 292; Sutherland on Damages, vol. 1, pp. 5, 134 and 140.

Neither the alleged value of appellee's stock of goods nor the alleged value of his services being the proximate cause of or natural elements of damage by reason of the alleged fraudulent representations made by appellant, the court erred in not sustaining appellant's fourth exception. Girard v. Moore, Jr., 86 Texas, 676; Milliken v. Callahan Co., 69 Texas, 212; Brackett v. Devine, 25 Texas Sup., 196; Holman v. Criswell, 13 Texas, 38; Grant v. Whittlesey, 42 Texas, 322; Sutherland on Damages, secs. 52, 53, 59, 60, 68, also, supra.

The evidence as to the value of Caplen's stock at most showed that such representations as to its value was purely a matter of opinion on Caplen's part, and was not such a representation of a fact as would render Caplen liable for damages, even if damage was suffered by Cox, and the court should have so held. Warner v. Munsheimer, 2 Texas App. Civ., 345 (Wilson); Kempner v. Wallis, 2 Texas App. Civ., 519 (Wilson); Younger v. Welch, 22 Texas, 428; Wells v. Houston, 23 Texas Civil App., 653; Dawson v. Sparks, 1 Posey U. C., 736; Mar-

shall v. Crawford, 2 Posey U. C., 479, 480; Navarro Pub. Co. v. Fishburn, 2 Posey, 593; Sanger v. Slayden, 7 Texas Civ. App., 609-614.

The mere fact, if it be a fact, that Caplen misrepresented the value of his own stock did not authorize Cox to show by evidence that his stock was worth more than that agreed upon ($1,180.38), and said Cox was estopped from recovering, if he could recover at all, more than said value of $1,180.38. Parker v. Campbell, 21 Texas, 763; Thomas v. Groesbeck, 40 Texas, 535; Schwarz v. National Bank of Texas, 67 Texas, 219; Daugherty v. Yates, 13 Texas Civ. App., 650; Page v. Arnim, 29 Texas, 72; A. & E. Ency. of Law, vol. 2, pp. 387, 388 and 392.

*John M. King* and *McDonald Meachum,* for appellee.—Where a party has been induced by fraudulent misrepresentations to enter into a partnership contract, a court of equity may treat the agreement as a nullity in consequence of the fraud and declare it void *ab initio,* and in such a case the relief afforded will be the repayment to the party upon whom the fraud is perpetrated of the amount by him invested in such partnership with legal interest thereon, together with reasonable compensation for his services and time employed while engaged in carrying out the terms of such fraudulent contract so induced to be entered into by such false misrepresentations. Richards v. Todd, 127 Mass., 167; Oteri v. Scalzo, 145 U. S. Rep., 588, citing: Newbigging v. Adam, 34 Ch. Div., 582; Smith v. Everett, 126 Mass., 304; Fogg v. Johnston, 27 Ala., 432; Story Partnership, sec. 232, 285; Hynes, etc., v. Stewart & Owens, 10 B. Monroe (Ky.), 433, citing: Collyer's Law of Partnership, p. 199, and Gaw on Partnership, p. 121; Mechem's Elements of Partnership, sec. 251, pp. 159, 160, and authorities there cited; Lindly on Partnership (Wentworth's Ed.), vol. 2, pp. 554-556, star pp. 482-484, and authorities there cited; Fogg v. Johnston, 27 Ala., 432, 62 Am. Dec., 771; Howell v. Harvey, 5 Ark., 270, 39 Am. Dec., 376.

As to false representations if innocently made avoiding contract see: Mitchell v. Zimmerman, 4 Texas, 75-83; Loper v. Robinson, 54 Texas, 514; McCord-Collins Com. Company v. Levi, 21 Texas Civ. App., 111; Davis v. Driscoll, 22 Texas Civ. App., 16; Pendarvis v. Gray, 41 Texas, 329; Wright v. United States Mortgage Co., 42 S. W. Rep., 789.

"Nor would the effect of the representation be impaired by evidence showing that injured party could have ascertained its falsity by inquiry." Wright v. United States Mortgage Co., supra; Griffiths v. Hanks, 46 Texas, 219; Labbe v. Corbett, 69 Texas, 503; Morrison, Herriman & Co. v. Adoue & Lobit, 76 Texas, 255; Moline Plow Co. v. Carson, 72 Fed., 392, and authorities there cited; Cooper et al. v. Schlesinger, 111 U. S., 148; Billings v. Asper Smeltering Co., 51 Fed., 338.

Appellee having alleged that there had been fraudulent representations by which he was induced to enter into the contract and that he believed such false representations and relied upon them, appellant could not now be heard to say that by the exercise of reasonable diligence upon the part of appellee, he could have discovered the fraud and thereby could have relieved himself of the fraud appellant had

perpetrated upon him. Appellee had a right to believe the representations made by appellant were true, and he had a perfect right to rely upon same as made to him by appellant, and he was not required to investigate as to their truthfulness. Labbe v. Corbett, 69 Texas, 509; Wright v. United States Mortgage Co., 42 S. W. Rep., bottom of page 790; Griffith v. Hanks, 46 Texas, 219; International & G. N. R. R. Co. v. Harris, 65 S. W. Rep., 885, bottom of page 887, and authorities there cited.

REESE, Associate Justice.—This suit was brought by John A. Caplen against Robert H. Cox for settlement of a partnership between them and to recover the balance alleged to be due him by Cox after settlement of the partnership business.

Cox answered by general demurrer and general denial, and by special plea in the nature of a cross-bill alleged that he had been induced to enter into the partnership by the false and fraudulent representations of Caplen, and praying that the partnership be dissolved and that he have judgment for the amount of his investment and interest and the value of his services in conducting the business, less the amount drawn out by him.

Upon trial before the court without a jury defendant Cox had judgment for the amount of his original investment with interest from the date of the partnership agreement, and seventy-five dollars per month from that date until the cessation of the business thereunder, for his services, less the amount actually received by Cox out of the business, in the aggregate $2,512.64. From this judgment Caplen appeals.

It was alleged in the petition that on October 16, 1901, appellant and appellee had entered into a written agreement of partnership to carry on a general merchandise business in Navasota, Grimes County, Texas, under the firm name of Robert H. Cox & Co., appellant to be a silent partner. That appellant put into the business $8,111 and appellee $1,180, making a total capital of $9,291. Appellee was to have charge of the business, so far as selling was concerned, appellant was to do the buying and was to handle all cash, each party was to be allowed to draw $75 per month and no more for personal expenses. The partnership was to continue for five years, but might be dissolved at any time by Caplen or by mutual agreement. That the business had run down, the sales were not sufficient to meet current expenses, and Caplen not being satisfied had dissolved the partnership, as he had a right to do under the agreement. Appellant prayed for an injunction, the appointment of a receiver, and that an auditor be appointed, and for judgment for what might be found to be due him upon a statement of the accounts between them.

Appellee after general demurrer and general denial, pleaded specially that on or about October 16, 1901, he was engaged in business in Galveston owning a stock of goods of the value of $3,678.30, with a liability thereon of $1,228.21, leaving a net value of $2,450.09, and that appellant was also engaged in business in Navasota, having a stock of goods at that point. That appellant proposed to appellee that they form a partnership whereby the stock of each should be put into said partnership as the assets of the firm to be known as R. H. Cox & Co.; that ap-

pellee should remove his stock of goods from Galveston to Navasota, the partnership business to be conducted at Navasota; that in order to induce appellee to enter into said partnership, appellant falsely and fraudulently represented to appellee that the reasonable value of appellant's stock was $8,111, and that appellant knew that such representations were false and fraudulent; that appellant's stock was of the reasonable value of $3,443, and such false representations were made by appellant with a design of deceiving appellee, and to induce him to make said partnership; that appellee did not know of the falsity of said representations, and was deceived thereby, and he believed them to be true at the time made, and acted upon same, and was induced thereby to enter into the partnership; that he did not know the reasonable value of said stock of appellant, and had never seen same, etc.; that in plaintiff's petition it is stipulated that appellee put into said partnership $1,180, and that appellant put in $8,111, but in truth neither put in any money, but put in their stock of goods, etc., as aforesaid; that in truth and in fact the reasonable value of appellee's stock of goods, etc., was $3,678, with a liability of $1,228, leaving a net value of $2,450, which was its true value; that appellee was induced by appellant to put in said stock at said agreed value of $1,180; that appellee closed his business in Galveston, and moved his stock of goods, etc., to Navasota, and took charge of said business, devoting his entire time and attention to same from October 16, 1901, until about April 1, 1903, until he discovered the alleged fraud, whereupon he repudiated said contract and demanded of appellant restitution; that his services during the time he was employed in said business was of the reasonable value of $1,627.70, prays that said contract be held null and void; that he recover of appellant the full value of his said stock of goods, etc., to wit, the sum of $2,450 with interest thereon, together with reasonable compensation for his services rendered to said partnership; that he be protected by the judgment of the court from any liability arising out of the business of the firm, and for general relief.

An auditor was appointed who in his report found that the amount of appellant's original investment was $4,825.51 and appellee's original investment $1,180.38. The auditor reports an indebtedness of appellee to appellant upon a statement of the accounts, of either $556.79 or $1,757.02, depending upon whether the stock on hand is to be taken at its invoice value or the amount for which it had been sold by the sheriff during the pendency of the suit.

Appellee filed objections to several items of the auditor's report, but afterwards withdrew all of them except those to that part of the report in which the original investment of appellee is placed at $1,180.30.

If the view taken of the case by the court was correct the only part of the auditor's report material to the issues were the findings of the amount of the respective investments of appellant and appellee, and the amount withdrawn by appellee while carrying on the business. The trial court filed findings of fact as follows, which we find to be supported by the evidence and which are here adopted:

"1. That on or about the 16th day of October, A. D. 1901, the defendant R. H. Cox was engaged in the mercantile business in the city of Galveston, Galveston County, Texas, and owned a stock of goods,

wares and merchandise and fixtures of the value of three thousand, six hundred seventy-eight dollars and thirty cents ($3,678.30) with a liability thereon of twelve hundred, twenty-eight dollars and twenty-one cents ($1,228.21) having a net value of two thousand, four hundred and fifty dollars and nine cents ($2,450.09).

"2. That on or about said date plaintiff was engaged in the mercantile business in Navasota, in Grimes County, Texas, with E. B. Deason, under the firm name of E. B. Deason & Co., owning and operating under said business two stocks of goods, one in a building known as the Vaughan building, and the other in a building known as the Smith building, both of said stocks of goods, wares and merchandise and fixtures being of the aggregate value of four thousand, eight hundred and twenty-five dollars and fifty-one cents ($4,825.51).

"3. That on or about the 16th day of October, A. D. 1901, plaintiff Caplen proposed to defendant Cox that they form a copartnership and combine the stocks of E. B. Deason & Co. and the stock of R. H. Cox and conduct the business in Navasota, Grimes County, Texas, under the name of R. H. Cox & Co., such combined stock to become the assets of said firm and be operated as one business under one management. Caplen to buy out his partner, E. B. Deason, and the firm to be composed of Caplen and Cox.

"4. That in order to induce Cox to enter into such copartnership Caplen represented to Cox that the stock of goods, wares and merchandise, fixtures, etc., owned by him, known as the E. B. Deason & Co.'s stocks, was of the value of seven or eight thousand dollars or of a value more than twice the value of the stock, etc., owned by Cox.

"5. That Caplen and Cox were on terms of friendly relations and had been for many years prior to said date, and Cox reposed great confidence in Caplen and placed great faith in his statements and representations to him and believed the same and accepted the same as true.

"6. That Cox believed said representations and statements to be true and so believing relied and acted upon same and was induced by Caplen upon such representations to discount the value of his own stock of goods, etc., owned by him at a discount of twenty-five percent and ten percent and to put a value upon the same as the value of his contribution to the firm assets of ($1,180.38), all of which was done by said Cox. That said stock of goods owned by said Cox was a clean, fresh stock of goods.

"7. That upon such representations and statements, Cox, believing the same to be true and relying and acting upon same, was induced to and did enter into the contract with Caplen in evidence, date October 16, A. D. 1901. That said contract stipulates that Caplen put in in said business the sum of eight thousand, one hundred, eleven dollars and twenty-nine cents ($8,111.29) in cash and that said Cox put in in said business the sum of eleven hundred, eighty dollars and thirty-eight cents ($1,180.38) in cash, that no part of said capital was in fact in cash.

"8. That the entire capital of said firm in fact consisted of the combined stocks of E. B. Deason & Co., owned by Caplen, and the stock owned by Cox. That the value of the stock, etc., put in said

firm by Caplen was of the value of $4,825.51, and the value of the stock, etc., put in said firm by said Cox was $3,678.30, with a liability thereon of $1,228.21, which left a net value of $2,450.09.

"9. That the liability of $1,228.21 owed by Cox was paid by Caplen and credited to him in the combination of the assets of the firm of R. H. Cox & Co.

"10. That under the terms of said contract Caplen had the dictation and control of all financial matters pertaining to said business, and the exclusive management and disposition of the proceeds of said stock and of the buying of all the goods for said business and payment of all bills for said business, and that Cox should have the management of the store and the business to the extent of selling the goods, etc., as provided in the contract.

"11. That in pursuance with the terms of said contract Caplen bought all goods and had same shipped to Navasota and paid all bills against said firm. That in pursuance with terms of said contract Cox took charge of said business on or about the 16th day of October, A. D. 1901, and managed and conducted the same in accordance with said contract until on or about the 31st day of March, A. D. 1903, when he, the said Cox, first discovered that the stock of goods Caplen had put in in said business was not of the value represented to him by Caplen and which he, the said Cox, had believed to be true.

"12. That the discovery by Cox on or about said date of March 31, A. D. 1903, was the first time Cox discovered the shortage and ascertained the truth. That immediately upon such discovery Cox advised Caplen that the partnership affairs must be adjusted and that he could not continue the business and that a settlement and adjustment must be had and thereby immediately repudiated said contract.

"13. That under the terms of the contract Caplen and Cox each had the right to draw from said business the sum of $75 per month and that Cox drew from said business in cash and sundries from the 16th day of October, A. D. 1901, to the date of dissolution of the partnership, to wit, on or about the 31st day of March, A. D. 1903, the sum $1,627.70.

"14. That Cox gave his entire time and attention to said business from said date of the contract to on or about said date of March the 31st, A. D. 1903, managing and conducting said business in accordance with said contract and that such services were reasonably worth the sum of $75 per month."

The court did not err in overruling appellant's general demurrer and special exception to appellee's special answer or cross-bill. In this pleading appellee set out fully the facts showing that he had been induced by the false and fraudulent representations of appellant to enter into the partnership agreement, and also that he had been led thereby to agree to an undervaluation of his stock of goods, putting the same in at $1180 instead of $2450 which was the real net value, and that he had given his entire time to the business, with the value of such services. The facts pleaded, if true, entitled appellee to have the partnership agreement cancelled and held for nought, and to recover of appellant whatever he had put into the business, estimating his stock at its proper valuation, and interest thereon, with reasonable

compensation for the value of his services while attending to the business, less what he had withdrawn from the business for his personal use.

"Where a person is inveigled by the false representations of others to become a partner with them, the court will rescind the contract of partnership at his instance; and will compel those who inveigled him into joining them to repay him whatever he may have paid them, with interest, and to indemnify him against all claims and demands to which he may have become subject by reason of his having entered into partnership with them, he on the other hand accounting to them for what he may have received since his entry into the concern." (2 Ewell's Lindley on Partnership, p. 927; 22 Am. & Eng. Ency. of Law, 209, and cases cited.)

In such case appellee would be entitled to recover not only the value of his investment in the business, with interest, but the reasonable value of his services in attending to the business. (Richards v. Todd, 127 Mass, 167.)

The first, fourth, sixth, eighth and eleventh conclusions of fact of the trial court are objected to by appellant. We assume that the objection intended to be urged is that these conclusions are not supported by the evidence. None of these assignments can be sustained. The evidence was sufficient to support all of the court's findings of fact. The partnership contract shows the representations of Caplen, as to the value of his stock, and the auditor's report, to which there was no exception as to this item (in fact no exception was taken as to any item thereof by appellant) showed that Caplen's stock was of the value of $4825.50 instead of $8111.29, as represented by him. The evidence leads to the conclusion, however, that Caplen added to the value of his stock at Navasota $1228.21 which Cox owed and which Caplen paid. The evidence excludes any inference that this was a mere expression of opinion by Caplen, or that it was intended by either of them to be taken as such. This was the E. B. Deason stock formerly owned by Caplen and Deason, and the uncontradicted evidence showed that a very short time previous Caplen had bought Deason's half interest in the stock for $1,150, and nothing had been added to the stock thereafter and before the date of the partnership agreement. It is not necessary to the relief granted to appellee that Caplen should have known that these representations as to the value of his stock were not true. It is sufficient that he should have made the representations; not as a mere matter of opinion but as a fact; not knowing them to be true. Caplen stated that he got the statement upon which the value of his stock was based from Nicholson, his bookkeeper. This, and the particularity with which the exact value of the stock is given, show that he claimed to know its exact value. (Putnam v. Bromwell, 73 Texas, 468.) If this was not its true value, it does not matter whether he knew the fact or not. It can not be said that the parties had equal means of information, if in fact, Cox had any means of information as to the value of Caplen's stock. (Mitchell v. Zimmerman, 4 Texas, 79-80; Pendarvis v. Gray, 41 Texas, 329; Morrison, Herriman & Co. v. Adoue & Lobit, 76 Texas, 255. Hawkins v. Wells, 43 S. W. Rep. 818; Neeley v. Rembert, 71 S. W. Rep. 262.)

In the circumstances disclosed by the evidence, Cox had a right to rely upon Caplen's deliberate statement as to the value of his stock. Caplen, at least, should not be heard to say that Cox should not have trusted him, but should have himself examined the stock before making the contract. No proposition was made to him by Caplen that he should do so at the time the partnership agreement was made. (Labbe v. Corbett, 69 Texas, 503, 2 Pom. Eq. sec. 891.) The evidence supports the finding that the representation of Caplen as to the value of his stock induced Cox to enter into the partnership agreement, and also to submit to a great undervaluation of his own stock. The larger the amount of Caplen's stock the more valuable the partnership would be to Cox, and it is not unreasonable that he would have submitted to harder terms in fixing the value of his own stock than he otherwise would, in view of the large value of Caplen's stock as represented by him. This is substantially the effect of Cox's testimony, and is not contradicted except by Caplen, who testified that Cox's stock of $2,450, net value, was not worth more than forty cents on the dollar. Appellee was no more concluded by the value placed upon his stock in the agreement than he was by any other provision of the agreement, if he was fraudulently induced to make it, but might show the real value of his stock as a basis of recovery.

Appellant complains that the court erred in rendering judgment in favor of appellee for the cost price of his goods instead of the market value. The court finds that the net value of appellee's stock was $2,450. This was the real value of the stock as shown by the testimony of Cox. No objection was made by appellant to this manner of proving the value, or that the evidence should be restricted to the market value. Caplen himself testified that their value was not more than forty cents on the dollar of their cost, not that that was their market value, but that that was their value. There is no question of any other kind of value of the goods except their worth in the market, and when Cox testified as to their value, or their real value, as distinguished from the value placed upon them in the partnership agreement, it must be assumed that he meant the market value, in the absence of any objection on the part of Caplen to the proof of value in this way, or any insistence, until after the trial, that the market value, *eo nomine,* should be proven.

The objections to the conclusions of fact, as set out in the several assignments, can not be sustained as we find the conclusions to be supported by the evidence. Insofar as these asignments go to the alleged error of the court in not finding such facts as are indicated in the several assignments, they can not be considered in the absence of a request for such findings. Insofar as such facts, which appellant contends the court should have found in lieu of the facts found, are contradictory of the facts found by the court, our conclusion that the conclusions of fact are correct involves necessarily the conclusion that there was no error in the failure or refusal of the court to find other facts, inconsistent therewith or contradictory thereof.

The court found that the reasonable value of the services of Cox in attending to the business from October 16, 1901, to the date of the dissolution, March 31, 1903, was $75 per month, and rendered judgment

in his favor for $1,312.50. It was also found that Cox had drawn out of the business in cash and sundries for his own use $1,627.70, being $315.20 in excess of the amount he was entitled to for his services. It is impossible to tell from the record when this amount of $1,627.70 was drawn out by Cox, further than that it was done during the continuance of the business, but it does appear that at the date of the dissolution, March 31, 1903, Cox had drawn out $315.20 more than he was entitled to as the value of his services. Upon this amount he should have been charged legal interest from March 31, 1903, to the date of the judgment, January 6, 1905. The amount of this interest is $33.45. The failure to charge appellee with interest on the whole amount drawn out by Cox is assigned as error and to the extent indicated the assignment must be sustained. We find no other error in the record requiring a reversal, but for this error the judgment will be reversed and the cause remanded, unless appellee shall within twenty days enter a remittitur of this amount, in which case the judgment will be affirmed, at the cost of appellee.

*Reversed and remanded unless remittitur is filed.*

Writ of error refused.