## CENTRAL STATE BANK OF ABILENE v. GODFREY et al.

### No. 1024—5201.

Commission of Appeals of Texas, Section A.

June 25, 1930.

Scarborough & Wilson and Wagstaff, Harwell, Wagstaff & Douthit, all of Abilene, and Grisham Bros., of Eastland, for plaintiff in error.

Clint & Eades, of Dallas, Davidson & Hickman, of Abilene, and Goggans & Allison, of Breckenridge, for defendants in error.

HARVEY, P. J.

This is a suit brought by the defendants in error, P. S. Godfrey and T. C. Eads, against the Central State Bank of Abilene, to enforce specific performance of an alleged contract to convey certain royalty and mineral rights in three sections of land in Winkler county. Judgment for the plaintiff in error was rendered by the trial court, on an instructed verdict. The Court of Civil Appeals reversed this judgment. 5 S.W.(2d) 529.

A series of letters which passed between Godfrey and C. T. Hutchison, the latter acting for the plaintiff in error, is relied on as evidencing the contract which is sought to be enforced. The letters are as follows:

"Abilene, Tex., May 18, 1926.

"Mr. P. S. Godfrey,
"Mercantile National Bank Bldg.,
"Dallas, Texas.

"Dear Sir:

"Replying to your letter of the 13th in which you enclose oil and gas lease on the South West ¼ of Section #38 which you agree to lease at the rate of $1.25 per acre will say that between the time that I wrote you and received your letter, I sold the three sections we have been mentioning namely 23–25 and 38 in fee and therefore will not be able to deliver to you this lease unless for some reason this deal fails to mature and I do not think it will. I am sorry that I did not receive your letter before I closed this deal with the other party, however I still have plenty of royalty in the other six sections which are nearer the well same being sections 34, 35, 40, 41, 45 and 46 that I could sell you which in many instances is better to buy than lease from the fact that it does not run out as a lease does. If you could use the royalty in any of these sections, I will be glad to name you a price which will run a little cheaper than section No. 41 that you bought on account of it being further away from the well.

"Let me hear from you regarding this matter that I may be able to sell you some royalty in these sections.

"Assuring you that I regret very much having sold the lease before receiving your letter and trust that I may be able to sell you some of the royalty, I am,

"Yours truly,          C. T. Hutchison."

"Dallas, Tex., May 27, 1926.

"Mr. C. T. Hutchison,
"% Central State Bank,
"Abilene, Texas.

"Dear Sir:

"Replying to your favor of May 18th, advising that you had sold the three sections, part of one of which I was desirous of leasing but that you will quote me a cheaper price on the royalty in Sections 34, 35, 40, 45 and 46 than I paid on Section 41 by reason of their being farther away from the well.

"You, no doubt, know that this well is at present drilling below 1300 feet and has not had a showing of either gas or oil, so that a

man purchasing royalties at this time would not expect to pay as much as when the well was first spudded, as he has lost the play on the first 1300 feet and his chances are now narrowed down to balance of the depth of the well; and usually a well that has any deep oil makes some showing at a shallow depth of either oil or gas. However, if your price is enough cheaper than that I paid on Section 41 to interest me, I might purchase some more royalty from you and would, therefore, suggest that you quote me a price on a one-sixteenth royalty on Section 34; also, on Sections 46 and 35, same to be sold upon you furnishing complete abstract showing good and marketable title in the Central State Bank.

"Kindly let me hear from you promptly on this matter, and oblige.

"Very truly yours, P. S. Godfrey."

"Abilene, Tex., May 29, 1926.
"Mr. P. S. Godfrey,
"Mercantile Nat'l Bank, Bldg.,
"Dallas, Texas.
"Dear Sir:

"Referring to your letter of May 27th, in which you state that you would be interested in buying one-sixteenth royalty in Sections 34, 35 and 46 in Winkler County, would say that I would make you a price of three dollars per acre on the one-sixteenth royalty in the three above mentioned sections, furnishing you one complete abstract covering the three sections. If this proposition is agreeable to you, please let me hear promptly, and oblige,

"Yours very truly, C. T. Hutchison,
"President."

"Dallas Tex., June 3, 1926.
"Mr. C. T. Hutchison,
"Central State Bank,
"Abilene, Texas.
"Dear Sir:

"Replying to your favor of the 29th ult., advising that you will make me a price of $3.00 per acre on $\frac{1}{16}$ royalty covering the three sections, to-wit: 34, 35 and 46 in Winkler County, I suppose by this that you mean you are willing to sell this on a $3.00 basis, or a basis of $3.00 per acre for full royalty, which would be a little less than what I paid in Section 41 which was on a basis of $5.00 per acre.

"My latest information on the Westbrook Well shows this well to be drilling below 1800 feet, and no showing of either oil or gas up to the present time which, of course, does not make things look very favorable. However, if a deal could be closed immediately I would be willing to pay the sum of $650.00 for $\frac{2}{16}$ths of the royalty on the above three sections, and you to furnish one abstract showing good and marketable title covering the three sections. This is very little less than the price you offered to take and is taking $\frac{2}{16}$ths instead of $\frac{1}{16}$, so I feel that under the circumstances I would be entitled to this reduction. If you care to sell at this price please confirm by return mail, and if you desire I will then prepare contract for both parties to sign and will close the deal in the same manner as the last deal was closed.

"Trusting to hear from you by return mail I beg to remain,

"Very truly yours, P. S. Godfrey."

"Abilene, Tex., June 4, 1926.
"Mr. P. S. Godfrey,
"902 Mercantile National Bank Bldg.,
"Dallas, Texas.
"Dear Sir:

"Replying to yours of the 3rd concerning the purchase of some interest in sections 34–35 and 46 in Winkler County will say that I will deliver to you $\frac{2}{16}$ths of $\frac{1}{8}$ of the royalty in these three sections for $650.00. If you would prefer to draw the contract or deed, you may do so and send same to me for my examination and will accept same if it meets with our terms. I would prefer your making the contract because it would be worded in a way that would be satisfactory to you, which I might not do in case I should prepare same.

"I will furnish you one complete abstract covering amount of royalty in the three sections which will be exactly the same as the abstract that you now hold on section 41 as this abstract covers the six sections and just certifies to for one section. I will give you a letter guaranteeing the abstract to be a duplicate of the one you have so that you may pay on this amount and which will protect you so that you may recover the amount paid for this royalty in case the abstract is not as represented. When I receive your deed and execute same and return to you, I will send you the letter at the same. You will please send this at once so that we can get this matter closed up at once.

"Yours truly, C. T. Hutchison,
"President."

"Dallas, Tex., July 12, 1926.
"Central State Bank,
"Abilene, Texas.
"Dear Sir: Attention: C. T. Hutchison

"I owe you an apology for not answering your letter of June 4th regarding the sale of $\frac{2}{16}$ths of the landowners $\frac{1}{8}$th royalty in Sections 34, 35 and 46, Winkler County, Texas. This letter evidently was delivered while I was busily engaged in the trial of a case at the courthouse and was placed on my desk and got mixed up with some other papers and placed in one of the files without my having opened same, and on last Saturday on going through this file I came across this

letter and opened and read it for the first time.

"I am still willing to purchase this royalty on the basis mentioned in my letter to you and in your letter to me. I have a friend here who is taking one-half of this; that is, I am buying $1/16$th of the landowners $1/8$th royalty, and he is taking the other $1/16$th of the landowners $1/8$th royalty, and in order to close this deal I do not think it will be necessary for us to execute any sale contract but instead I have prepared two mineral deeds, one to P. S. Godfrey and the other to T. C. Eades, each reciting a consideration of $325.-00 in payment of $1/16$th of the landowners $1/8$th royalty on these three sections, and these mineral deeds are worded exactly like the one you executed when I purchased the royalty on Section 41, with the exception of the consideration of course is different and the fractional royalty being purchased is different. I enclose these two mineral deeds herewith. I notice that Section 46 is in Block No. 26, while Sections 34 and 35 are in Block B-5, and the deeds are drawn that way.

"You state in your letter that you will furnish one complete abstract covering the three sections which will be exactly the same as the abstract I now hold on Section 41. You are in error in believing that the abstract I now hold covers all six of these sections, as quite a number of the documents set out therein, particularly all records from the General Land Office cover only Section 41, and a number of these documents set out therein cover only those sections embodied in Block B-5 and do not cover Section 46 which is in Block No. 26. I shall, of course, expect you to furnish me one complete abstract showing good and marketable title to Sections 34, and 35 of Block B-5, and Section 46 in Block No. 26, Public School Lands, Winkler County, Texas. If you will simply write me a letter guaranteeing to furnish me with complete abstract showing good and marketable title in Central State Bank to Sections 34 and 35 of Block B-5, and Section 46 in Block No. 26, and then attach this letter to the two mineral deeds which I enclose herewith, after you have properly executed and acknowledged said deeds for Central State Bank, and attach two drafts, each for $325.00, one upon T. C. Eades and the other upon P. S. Godfrey, and send all to the Mercantile National Bank, Dallas, Texas, subject to our examination and approval, we will as soon as we have examined the papers and found them in proper form, take up the two drafts. You can in the meantime place your order for the abstract covering the three above sections with the abstractors at Kermit and abstract can come forward later, because if the deal is to go through I agree with you it should be consummated at once, as I understand this well is now below 1800 feet; and up to the present time it has not had any showing of either oil or gas.

"Thanking you to give the above matter your prompt attention, I beg to remain,

"Very truly yours,   P. S. Godfrey."

"Abilene, Tex., July 14, 1926.

"Mr. P. S. Godfrey,
"901-2-3-4 Mercantile Bank Bldg.,
"Dallas, Texas.
"Dear Sir:

"I have your letter of recent date in answer to my letter of some thirty days ago concerning royalty in Winkler County land and received enclosed mineral deeds, one to yourself and one to Mr. Eades. I re-wrote these deeds making a little change in the last paragraph, balance being an exact copy as yours and I am submitting them to you for your inspection and if satisfactory, return them and I will endorse them and send to you together with all necessary papers, including abstract which you may examine and if satisfactory, will be ready to close the deal. In case the changes I have made are not satisfactory to you, please mark or write into it such changes as will be satisfactory and return to me and I will try to adjust the matter satisfactorily to both of us.

"Please pardon me for making this change as I thought it would be better and hope it will be satisfactory to you, but if not, will be glad to handle in the way outlined. Let me hear from you as soon as convenient.

"Yours truly,   C. T. Hutchison,
"President."

"Dallas, Tex., July 15, 1926.

"Mr. C. T. Hutchison,
"Central State Bank,
"Abilene, Texas.
"Dear Sir:

"Replying to your favor of the 14th. inst., enclosing royalty deeds which you had prepared and substituted for the ones which I sent you a few days ago, beg to state that after examining these deeds it appears to me that they would not be satisfactory to either yourself or to me, as they do not correctly state the facts. The deeds which you prepared contain the following statement:

"'It is expressly agreed and understood that the grantor herein has already leased this property conveyed to J. W. Grant and assigned by him to Westbrook & Company of Fort Worth, Texas.'

"As a matter of fact the Grantor herein (Central State Bank) did not lease this property to J. W. Grant but same was leased to J. W. Grant by T. G. Hendrick, and Central State Bank did not acquire the property until after original lease was made to Grant and same had been assigned by Grant to Westbrook & Company of Fort Worth.

"However, I have prepared two more deeds and have changed the paragraph regarding the leasing so that same correctly states the

facts, and I enclose these two new deeds herewith; also, returning the ones which you prepared. After examining the two which I have prepared and enclose herewith, if they meet with your approval you may execute them as President of Central State Bank, being sure to have them attested to by your Secretary and properly acknowledged. Then, if you will furnish me with complete abstract showing good and marketable title to this property in the Central State Bank, and will attach drafts to the deeds and forward to the Mercantile National Bank, according to instructions in my former letter, I will see that these drafts are properly taken up.

"I would like very much to close this matter up within the next week or ten days as I expect to leave town about the first of August and I may be gone two or three weeks, so will appreciate you rushing the matter all that you can.

"Yours very truly, P. S. Godfrey."

"Dallas, Tex., July 19, 1926.

"Central State Bank,
"Abilene, Texas.
"Gentlemen: Attention: C. T. Hutchison, President.

"I have just received a report that the Westbrook Well had an oil showing, and if this is true it will give myself and Mr. Eades an opportunity to make an immediate profit upon a turn-over of the one-eighth royalty that we have recently purchased from you covering Sections 34 and 35 of Block B–5 and Section 46 of Block 26; so, I will thank you to wire me at once at my expense, stating just how soon you will forward the deeds and drafts to the Mercantile National Bank here, as per my instructions. I will appreciate you doing this at once, and as far as the abstracts are concerned they can be prepared and forwarded to me later, as any unnecessary delay at this time may cause us to sustain considerable monetary loss.

"If you have any objections whatever to the last deeds which I prepared and forwarded you, then you will kindly execute the first deeds I prepared and forward same with drafts attached to the Mercantile National Bank as per your agreement in your letter of July 14th.

"Kindly wire me at my expense, acknowledging receipt of this letter, and advising how soon executed deeds will be placed in the mail, and very much oblige.

"Yours very truly, P. S. Godfrey."

"Abilene, Tex., July 21, 1926.
"Mr. P. S. Godfrey,
"901 Mercantile Bank Bldg.,
"Dallas, Texas.
"Dear Sir:

"Replying to your letter of the 20th regarding the Winkler County royalties will say that I have ordered a supplement deed down to date and I am trying to check up on my royalty in these six sections. It looks like I have sold all the royalty in Section 34, but I still have some royalty in sections 35 and 46 but am unable to check 34 at present but will advise you regarding same as soon as I am able to estimate how I stand on that section.

"I understand that we have an oil showing out there but I am unable to get a correct report on same. As you suggested, it might be a good thing to sell as it is always too late after the well stops producing and will advise you on this matter just as quick as I can.

"Yours truly, C. T. Hutchison, "President."

▌In order to say that this series of letters shows a concluded contract, the letters must be taken together and construed as an integral whole, and the result must show that the point was reached in the negotiations where the parties understood each other and that the terms proposed by one were acceded to by the other. Patton v. Rucker, 29 Tex. 402; Summers v. Mills, 21 Tex. 77.

▌It appears from these letters that when the negotiations were begun the primary object at which the parties aimed was the consummation of an executory contract of sale. As the negotiations progressed, the aim was shifted to the making of a deed—an executed contract. But it clearly appears from the tenor of the various letters that, throughout the negotiations, the matter of the furnishing of an abstract to the proposed purchaser formed a part of the subject-matter under negotiation, and that both parties understood that, in the absence of an agreement in respect to this particular matter, there was to be no contract at all. Inasmuch, therefore, as we have concluded that this agreement was never reached by the parties, the question as to an agreement on other matters becomes immaterial.

In his letter of May 29th, Hutchison proposed to furnish "one complete abstract covering the three sections." The language of this proposal signifies that the abstract was to show a marketable title in the bank. But in his letter of June 4, while the negotiations still were open, he substituted for the above proposal, as he had the right to do, the following proposal: "I will furnish you one complete abstract covering amount of royalty in the three sections, which will be exactly the same as the abstract you now hold on section 41." This is immediately followed by the declaration that a letter would be given by Hutchison "guaranteeing the abstract to be a duplicate of the one you have." Whatever ambiguity might have been borne by the first quoted language, had it been left standing alone, is removed by the declaration of the writer that he would give a letter "guaranteeing the abstract to be a duplicate

of the one you have." Language could hardly be framed which would more certainly show that an abstract, in all respects the same as the one already held by Godfrey, was the specific thing meant to be furnished, if the proposal were accepted. Probably Hutchison, as contended by counsel, did labor under the mistaken belief that the duplicate of the abstract to section 41, which he proposed to furnish, would be a complete abstract to the three sections, but his mistaken belief in this regard cannot alter the plain meaning of his words. That Godfrey understood what was meant by Hutchison is disclosed by the former's reply letter of July 12th, in which he in effect rejected the proposal and said, "I shall, of course, expect you to furnish me one complete abstract showing good and marketable title" to the three sections; and called for a letter "guaranteeing to furnish me with a complete abstract showing a good and marketable title" to the three sections. To this, Hutchison replied by letter of July 14th in which he, in effect, offered to submit to Godfrey an abstract for examination for the purpose of determining if same was satisfactory. This proposal was not accepted by Godfrey, but, on the contrary, in his letter of July 15, he persisted in requiring the bank to furnish him an abstract "showing good and marketable title" to the three sections. It does not appear from the letters that the bank, at any time after Hutchison's letter of May 29th, consented to furnish such an abstract, or that Godfrey ever consented to accept anything less. It follows, therefore, that the letters do not disclose that a contract between the parties was consummated.

We recommend that the judgment of the Court of Civil Appeals be reversed, and the judgment of the trial court affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals reversed, and judgment of the district court affirmed.