**KENVER CORPORATION et al.,**
**Appellants,**

v.

**Ben S. ROBINSON, Appellee.**

**No. 7455.**

Court of Civil Appeals of Texas, Beaumont.

Decided March 15, 1973.

Rehearing Denied April 4, 1973.

**318**

Miller B. Walker, Jr., Johnson, Hoover, Cox & Miller, Houston, for appellants.

Arthur P. Terrell, Butler, Binion, Rice, Cook & Knapp, Houston, for appellee.

STEPHENSON, Justice.

This is an action brought under the Uniform Declaratory Judgments Act to have the rights of the parties determined as to an option to purchase land contained in a lease. Defendants filed a cross-action for specific performance. Trial was before the court and judgment was rendered for plaintiff. The parties will be referred to here as they were in the trial court.

■ Plaintiff, Ben Robinson, is the owner of the land in question, having purchased it while it was under a lease held by defendant, Kenver Corporation. Kenneth Payne, president of such corporation, was also named as a defendant. The lease was for a term of fifteen years, beginning June 1, 1960, and contained an option to purchase the leased premises which terminated September 30, 1970. The option purchase price on that date was a cash consideration of $119,535. The trial court made findings in its judgment as follows:

"That the Defendants failed to tender cash or any other legal tender on September 30, 1970, and Plaintiff was, therefore, not obligated to deliver a deed to them.

"That the 'Option to Purchase' contained in the lease agreement, as amended, involved in this suit has expired by its terms and is of no further force and effect."

The trial court also made findings of fact and conclusions of law. Finding of fact # 11 is as follows:

"11. that neither of the Defendants nor any agent of theirs tendered the sum of $119,535.00 in cash or any other legal tender to the Plaintiff on September 30, 1970 prior to 6:00 p. m. on said date."

Conclusion of law # 3 and # 4 are as follows:

"3. that neither of the Defendants nor any authorized agent of theirs, tendered the cash provided for in such option agreement, $119,535.00, or any other legal tender, to the Plaintiff prior to 6:00 p. m. on September 30, 1970 and under the terms and provisions of said option agreement the Plaintiff was therefore not obligated to deliver a deed to said premises to the Defendant, Kenver Corporation.

"4. that the option agreement contained in said lease has expired by its own terms and is of no further force or effect."

Defendants have a point of error that there is no evidence to support finding of fact # 11. In passing upon the no evidence point, we consider only the evidence favorable to such finding.

The lease in question contains a paragraph designated as "Conditions Precedent to Right of Purchase". Under section (a) of that paragraph, lessee had to deliver to lessor, not less than sixty days nor more than seventy-five days prior to the date he desired to purchase the premises, a written statement of such intent, but that notice would not obligate lessee to exercise the option. Under section (b) of that paragraph, lessee had to deliver to lessor, not less than forty nor more than fifty days prior to the date of purchase, written notice of such desire, stating that he does exercise the option and will, on the date mentioned, purchase the same for cash, pursuant to the terms of the lease.

Our record includes a letter from defendant addressed to plaintiff and delivered on July 31, 1970, notifying plaintiff that defendant was giving the notice to exercise the option to purchase the premises on the 30th day of September, 1970. The record also contains a letter from defendant to plaintiff dated August 20, 1970 and received August 21, 1970, notifying plain-

tiff "that KENVER CORPORATION by this written notice has and does exercise this option and will on the 30th day of September, 1970, purchase same, for cash, pursuant to the terms herein stated in the Agreement, as amended." Also in the record is a letter dated September 25, 1970, from defendant to Bert Kadell, Vice-President of the Dallas Title Company, with a copy to plaintiff, stating the letter is written in conformity with a telephone conversation setting the closing of this purchase at Kadell's desk at 10:00 a. m. on September 30, 1970. Such letter stated the transaction had to be closed on that date to comply with the terms of the option, that it was a cash sale, and the mortgage funds had to be disbursed on that date.

The uncontroverted evidence shows that plaintiff and his attorney, Fred Abbey, went to the title company at 10:00 a. m. on September 30, 1970, ready, willing and able to close this transaction. Kenneth Payne and his attorney, James Miller, were also there but they were told that the attorneys for the mortgage company did not have the papers ready. Plaintiff testified that, if the money had been there, he was ready to deliver the deed and close the transaction. He also testified that his attorney said, "Call us if and when you get the money."

Bert Kadell testified that he was employed as a closer for the title company and that Home Title Company, Dallas Title Company and U. S. Live Title Company of Houston were one and the same company. Mr. and Mrs. Payne executed the note and deed of trust to the mortgage company and the deed of trust was filed for record at 12:49 p. m. on September 30, 1970. He received the loan package and the check in the amount of $130,000 from the mortgage company in the early part of the afternoon. He was ready, willing and able to deliver the cash purchase to plaintiff before 6:00 p. m. on September 30, 1970.

Fred Abbey testified that he was plaintiff's attorney concerning the sale of this property. He went with his client, the plaintiff, to the title company at 10:00 a. m. on the morning set for this transaction. He admitted that he received a call from defendant's attorney that afternoon between noon and 3:00 p. m. informing him that the money was being taken to the title company. He filed this lawsuit at 4:13 p. m. on September 30, 1970. He had a conversation with his client later that afternoon, about 5:00 p. m.

James Miller testified that he and his client, Kenneth Payne, went to the title company at 10:00 a. m. on September 30, 1970, and were told that the attorneys for the mortgage company did not have the papers ready. He told them all that he would pick up the papers, which he did. The Paynes executed the papers, the deed of trust was filed for record, and he carried the papers to the mortgage company for final approval. At 1:30 or 2:00 that afternoon, he picked up the check at the mortgage company and delivered it to the title company. While he was in the office of the mortgage company, he called plaintiff's attorney and told him that he had the funds and was taking them to the title company. Fred Abbey told him that they were not going to show and that he was preparing some papers to be filed. Miller testified that he delivered the money to Mr. Kadell and was told the deed had not been signed.

Kenneth Payne testified that he was with his attorney, Fred Miller, when he went to the mortgage company to pick up the check. He was present when Miller called Abbey and told him the funds were ready and that they were ready for closing.

■ The law is clear in Texas that an option to purchase is a unilateral contract which does not ripen into a mutually binding obligation until acceptance by the optionee. Hankey v. Employer's Casualty Co., 176 S.W.2d 357, 362 (Tex.Civ.App., Galveston, 1943, no writ) and Leggio v. Millers National Insurance Co., 398 S.W. 2d 607 (Tex.Civ.App., Tyler, 1965, error

ref. n. r. e.). It is also settled law that an acceptance of an option must be unconditional, unqualified and in accordance with the terms and conditions of the option. Vratis v. Baxter, 315 S.W.2d 331, 333 (Tex.Civ.App., Beaumont, 1958, error ref. n. r. e.).

■ Application of the laws of this state to the option before us brings this court to these conclusions: First, in order to exercise the option, defendants had to give the two written notices required by sections (a) and (b) under paragraph 3.04. The letters mentioned above, dated July 31, 1970 and August 20, 1970, satisfied those requirements. The second letter is an unqualified, unconditional acceptance of the option under the precise terms of the lease. By complying with those terms, defendants exercised the option to purchase this property. We come to that conclusion after a careful study of all of the provisions in this lease applying to the option to purchase. Paragraph 3.03 reads: "When exercised in the manner hereinafter provided, Lessee may purchase the demised premises on, and only on, the days and dates hereinafter stated." This indicates that the option is exercised by the giving of the notices under paragraph 3.04. Thereafter, defendant was obligated to pay the purchase price and plaintiff was obligated to execute a deed and furnish an owner's policy of title insurance. These remaining actions on the part of both plaintiff and defendants were mutual and concurrent acts, all to be performed at the same time. See Perry v. Little, 419 S.W.2d 198, 200 (Tex. 1967). Additional basis for this conclusion is found in paragraph 3.07 which provides that if lessee shall have exercised this option (past tense) and the title company will not guarantee the title, the lessee may decline to consummate the deal or waive the requirement and obtain specific performance.

The option provisions in this lease are silent as to the precise manner of closing the transaction after the option had been exercised. No specific time of day was set for closing except that it must be done before 6:00 p. m. on September 30, 1970. Both lessor and lessee had obligations to be performed. It is common knowledge that most real estate transactions of this size are handled with borrowed money. Plaintiff was obligated to furnish title insurance which necessarily meant that defendants had to execute a note and deed of trust and plaintiff had to execute and deliver a deed simultaneously with the payment of the money by defendants. Title insurance could not be issued until all of these details had been taken care of. The title company handling this transaction is the successor to the one named in the option. No objection was made by plaintiff to the time and place of closing and plaintiff and his attorney appeared at the designated time when all parties were told that the papers were not yet ready. From this point on, plaintiff and defendants had mutual responsibilities to see that this transaction was closed. Long before 6:00 p. m. on September 30, 1970, defendants had done everything required to complete the transaction. All that was required to close this matter was the execution and delivery of a deed by plaintiff to the title company. However, instead of returning to the title company, plaintiff's attorney was occupied preparing this suit and filing it some one hour and forty-five minutes before the deadline.

We have concluded that the evidence shows as a matter of law that defendants exercised the option under the terms of the lease and are entitled to specific performance of the option to purchase the premises in question.

Reversed and remanded with instructions that the trial court order such specific performance.