**Joe B. ATTERBURY and Margie Anderson, Appellants,**

v.

**J.T. BRISON, Appellee.**

No. 06–93–00068–CV.

Court of Appeals of Texas, Texarkana.

Jan. 27, 1994.

Rehearing Overruled Feb. 23, 1994.

Dabney D. Bassel, Law, Snakard, Gambill, Fort Worth, for appellant.

Paul W. Mayben, Pittsburg, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

OPINION

BLEIL, Justice.

This appeal arises from a suit for an accounting following the dissolution of a partnership. The key questions concern whether there is legally and factually sufficient evidence to support the judgment. We conclude that there is and affirm.

J.T. Brison bought Mt. Pleasant Answering Service and Mt. Pleasant Paging Service in 1981. In 1983, Brison wanted to buy pagers for his business, but was unable to obtain a bank loan. Brison asked Joe Atterbury for a loan to purchase the pagers. Atterbury refused to loan Brison the money, but agreed to buy a fifty percent interest in the business for a purchase price of $6,000.00. On April 29, 1983, Brison, Atterbury, and Anderson executed a partnership agreement. This agreement gave Atterbury and Anderson the option "to purchase the remaining 50% of the MT. PLEASANT ANSWERING SERVICE and MT. PLEASANT PAGING SERVICE ... at the end of six (6) months from closing date.... for $6,000.00 plus whatever equity [J.T. Brison] has in the paging service at that time."

Atterbury contacted Brison in September or early October 1983 and indicated that he wanted to exercise his option to purchase Brison's interest. On November 21, 1983, Atterbury, through his attorney, sent a letter to Brison offering to purchase Brison's interest in Mt. Pleasant Answering Service and Mt. Pleasant Paging Service for $6,000.00. Brison refused to sell his interest because he considered the offer to be untimely and insufficient.

In December 1983, Brison, Atterbury, and their attorneys met to discuss Atterbury's willingness to exercise the option to purchase the answering and paging services. Atterbury, claiming that there was no equity in the businesses, offered Brison $6,000.00. Brison refused to sell his interest, and Atterbury terminated the partnership at that time. Brison did not receive any financial benefits or compensation from the answering service or paging service after December 1983.

Brison sued Atterbury and Anderson for an accounting upon dissolution of the partnership. Trial was to the court. The trial court entered judgment in favor of Brison for $12,346.80 in actual damages plus attorney's fees and prejudgment and postjudgment interest.

Atterbury attacks both the legal and factual sufficiency of the evidence supporting the judgment. Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict upon special issues. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex.1991). A trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing the evidence supporting a jury's answers. *Id.*

In reviewing a no evidence point, we consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex.1992). If there is any evidence of probative force to support the finding, we overrule the point and uphold the finding. *In re King's Estate*, 150 Tex. 662, 664, 244 S.W.2d 660, 661 (1951). In reviewing a factual insufficiency point, we consider and weigh all of the evidence and set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

## EXISTENCE OF CONTRACT

Atterbury claims that there is legally and factually insufficient evidence to support the trial court's finding that a contract existed between Brison and Atterbury for the purchase of Brison's one-half interest in Mt. Pleasant Answering Service and Mt. Pleasant Paging Service or that this finding was immaterial. However, he has wholly failed to brief or argue this point. Rule 74 requires that points of error be supported by argument and authorities. TEX.R.APP.P. 74(f). It has long been held that a point of error not in minimal compliance with the briefing rules is waived. *Smith v. U.S. Nat'l Bank of Galveston*, 767 S.W.2d 820, 823 (Tex. App.—Texarkana 1989, writ denied). It is

not generally appropriate for an entire appeal to be disposed of because of briefing inadequacies. *See Inpetco, Inc. v. Texas American Bank/Houston N.A.,* 729 S.W.2d 300, 300 (Tex.1987). But, *Inpetco* is deemed to not prevent one or more points of error from being waived on appeal when the remainder of the case has been fully and thoroughly presented to the appellate court. *See Smith,* 767 S.W.2d at 824. Thus, we conclude that Atterbury has waived those points of error not briefed or argued. Furthermore, a copy of the contract was admitted into evidence without objection. The second paragraph of the contract contains the purchase option. The exhibit is some and sufficient evidence to support the trial court's finding. In addition, at trial and on appeal, all parties admit that there was a partnership agreement, with an option, that was exercised by Atterbury. However, as noted by Chief Justice Cornelius in his concurring opinion, Atterbury's exercise of the option was ineffectual.

## WRONGFUL DISSOLUTION

■ Atterbury also contends that there is legally and factually insufficient evidence to support the trial court's finding that the partnership business was dissolved on December 31, 1983, by Atterbury's actions and without any compensation being paid to Brison.

Atterbury announced at the December meeting that he wanted the partnership dissolved and that the partnership would be dissolved after a partnership tax return was filed for 1983. Atterbury moved the paging business, notified the partnership's customers that the business was dissolved and gave the customers the option of moving their accounts, filed an assumed name certificate, and acquired a new Federal Communications Commission permit.

Brison testified that he has not received any financial benefits or compensation from the answering service or paging service since December 1983. No partnership tax returns were filed after 1983; instead, Schedule Cs, which report the profits or losses from a business or profession, were filed with Atterbury's personal tax returns.

As trier of fact, it is for the trial court to judge the credibility of the witnesses, to assign the weight to be given to their testimony, and to resolve any conflicts or inconsistencies in the testimony. *See McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex.1986). There was legally and factually sufficient evidence to uphold the trial court's finding that the partnership business was dissolved on December 31, 1983, by Atterbury's actions and without any compensation being paid to Brison.

## DAMAGES

■ The primary issue on appeal is the value of the equity Brison had in the "paging service" at the end of 1983. Atterbury contends that the evidence is legally and factually insufficient to support the trial court's finding that he breached the contract on or about November 21, 1983, and that this breach caused Brison to suffer damages in the amount of $12,346.80. The damages are the sum of the $6,000.00 specified in the contract plus $6,346.80, which represented the value of Brison's equity in the business.

The court appointed Alan Carter, a certified public accountant, to calculate the partners' equity in the answering and paging services. Carter reported to the court that the value of Brison's equity interest in the partnership was $6,346.80. Carter did not specifically label this as book value, but based his opinion on the books of the business. He also disclaimed knowledge of the market value of Brison's interest.

Atterbury attacks Carter's testimony for its failure to divide Brison's equity between the "paging service" and the "answering service." The trial court found that the two services were really one business; therefore, the equity in the partnership also would be the equity in the paging service.

■ Atterbury also attacks Carter's testimony as having no probative value because Carter admitted that the partners' combined equity in the business would not necessarily reflect the net worth of the business and had nothing to do with the fair market value of the business. Carter calculated the partners' equity interests by taking the value of the

partners' capital accounts at the beginning of the partnership (May 1, 1983), adding in any capital contributions made by the partners or profit generated by the business, and subtracting any losses or withdrawals by the partners. In comparison, fair market value is the amount that a willing buyer, who desires to buy, but is under no obligation to buy, would pay to a willing seller, who desires to sell, but is under no obligation to sell. *City of Pearland v. Alexander*, 483 S.W.2d 244, 247 (Tex.1972). Carter stated that his calculations represented only the partners' equity in the business, which is what the partnership agreement requires. Under the terms of the contract, fair market value had no bearing on Atterbury's exercise of his purchase option.

In support of his contention that the partners had no equity in the business in 1983, Atterbury testified that the business had been unprofitable through the years and that he had to invest additional sums in the business to keep it going. Also, Brison, who assigned a value of $15,000.00 to his equity interest, admitted that the business was unprofitable in 1981 and only marginally profitable in 1982. Income and expenses were approximately equal at the time Atterbury purchased one half of the business, and the business ultimately lost money in 1983.

The Texas Uniform Partnership Act provides that any partner has a right to a formal accounting as to partnership affairs if he or she is wrongfully excluded by the co-partner. TEX.REV.CIV.STAT.ANN. art. 6132b, § 22(a) (Vernon 1970). In an action for an accounting, the burden is on the plaintiff to establish the value of the partnership assets at the time of the dissolution. The value of partnership assets should be based generally on market value, not book value. *Cheek v. Humphreys*, 800 S.W.2d 596 (Tex.App.— Houston [14th Dist.] 1990, writ denied); *Cauble v. Handler*, 503 S.W.2d 362 (Tex.Civ. App.—Fort Worth 1973, writ ref'd n.r.e.). Here, Carter's testimony was of book value and does not support the value determination. However, Brison testified the value of his share was $15,000.00. Testimony of partners regarding the value of the property contributed to the partnership by one of them is taken to mean market value where no objection is made requiring market value to be stated as such, and where it is market value that is in issue. *Caplen v. Cox*, 92 S.W. 1048, 42 Tex.Civ.App. 297 (1906, writ ref'd).

The trier of fact has considerable discretion when presented with conflicting evidence. It may believe one witness, disbelieve others, and may resolve inconsistencies in the testimony of any witness. *McGalliard*, 722 S.W.2d at 697. There is some evidence, that we find sufficient, to support the trial court's finding that Atterbury's wrongful action caused Brison to suffer actual damages of $12,346.80.

## PREJUDGMENT INTEREST & ATTORNEY'S FEES

Atterbury asserts that Brison is not entitled to prejudgment interest and attorney's fees because Atterbury tendered to Brison all that was due under the agreement. This action is founded on an oral or written partnership agreement and therefore recovery for attorney's fees and prejudgment interest is proper. *See* TEX.CIV.PRAC. & REM. CODE ANN. § 38.001(8) (Vernon 1986) (authorizing recovery of attorney's fees in a successful suit under a contract). We overrule this contention and all of Atterbury's other points of error.

The judgment of the trial court is affirmed.

CORNELIUS, Justice, concurring.

I concur in the judgment and in Justice Bleil's opinion, but I write separately to state why the judgment cannot be supported on a breach of contract basis, as the trial court found.

The trial court based its judgment in part on a breach of contract by Atterbury and Anderson. The partnership agreement gave them an option to purchase Brison's share of the business by paying $6,000.00, plus the value of Brison's equity in the business. Atterbury attempted to exercise the option by offering Brison $6,000.00, but nothing for his equity. Brison contended, and apparently the trial court agreed, that Atterbury's defective or inadequate exercise of his option obligated him to complete the purchase and pay

Brison for his equity. That is the basis for the trial court's findings and conclusions numbers four and one, respectively. Those findings and conclusions, however, are legally insupportable.

An option is unilateral. It imposes no liability on the optionee unless and until he exercises the option according to its terms. *Jones v. Gibbs,* 133 Tex. 627, 130 S.W.2d 265 (1939); *Corsicana Petroleum Co. v. Owens,* 110 Tex. 568, 222 S.W. 154 (1920); 14 Tex. Jur.3d *Contracts* § 79, at 128–29 (1981). Acceptance of an option, unless excused on equitable grounds, must be unqualified, unambiguous, and strictly in accordance with its terms. *Zeidman v. Davis,* 161 Tex. 496, 342 S.W.2d 555 (1961); *TSB Exco v. E.N. Smith, III Energy Corp.,* 818 S.W.2d 417 (Tex.App.—Texarkana 1991, no writ); *Cattle Feeders, Inc. v. Jordan,* 549 S.W.2d 29 (Tex. Civ.App.—Corpus Christi 1977, no writ); *Kenver Corp. v. Robinson,* 492 S.W.2d 317 (Tex.Civ.App.—Beaumont 1973, writ ref'd n.r.e.); *Hutcherson v. Cronin,* 426 S.W.2d 638 (Tex.Civ.App.—Tyler 1968, no writ); 14 Tex.Jur.3d *Contracts* § 83, at 133 (1981). Any failure to exercise an option according to its terms, including an untimely or defective acceptance, is simply ineffectual, and legally amounts to nothing more than a rejection. *Hutcherson v. Cronin, supra; Lambert v. Taylor Telephone Co-operative,* 276 S.W.2d 929 (Tex.Civ.App.—Eastland 1955, no writ); *Godfrey v. Central State Bank,* 5 S.W.2d 529 (Tex.Civ.App.—Eastland 1928), *rev'd on other grounds,* 29 S.W.2d 1015 (Tex.Comm'n App.1930). Consequently, an acceptance that does not comply with the option's terms, unless it is accepted by the optionor, binds neither the optionee nor the optionor. *Vratis v. Baxter,* 315 S.W.2d 331, 333 (Tex.Civ. App.—Beaumont 1958, writ ref'd n.r.e.).

Brison did not accept Atterbury's defective offer. Instead, he attempted to force Atterbury to exercise the option according to its terms. The law does not impose liability in such circumstances. As noted above, an option is necessarily conditional. The optionee may or may not, as he chooses, accept the offer. If he fails to accept the offer in strict accordance with its terms, there is no contract, and the optionee's only liability is loss of the consideration paid for the option. *Northside Lumber & Bldg. Co. v. Neal,* 23 S.W.2d 858 (Tex.Civ.App.—Fort Worth 1929, no writ); 14 Tex.Jur.3d *Contracts* § 79, at 128.

The judgment here, however, may be sustained on the basis of an accounting between partners on dissolution.[1] There is ample evidence that Atterbury and Anderson acquired all of the business on dissolution. There is also sufficient evidence that Brison's equity in the business was valued at $12,346.80, as found by the trial court.

With the foregoing reservations, I concur.

---

1. Indeed, Brison pleaded only for an accounting on dissolution. There is no pleading for breach of the option, although the parties probably tried that issue by consent. *See* Tex.R.Civ.P. 67.