**Beck SMITH, Appellant,**

v.

**The UNITED STATES NATIONAL BANK OF GALVESTON,** Appellee.

**No. 9671.**

Court of Appeals of Texas, Texarkana.

Feb. 22, 1989.

Rehearing Denied March 21, 1989.

Rodney Jack Reynolds, Houston, for appellant.

Ronald M. Gipson, Galveston, for appellee.

BLEIL, Justice.

Beck Smith appeals an instructed verdict in a suit to collect on a promissory note. Chester Scruggs, Jr. signed the note as principal; Smith signed as guarantor. The trial court instructed a verdict finding Scruggs, Jr. and Smith jointly and severally liable for $75,000.00, the amount of principal and interest on the note. The issue of attorney's fees went to the jury, which assessed $17,500.00 against Smith and Scruggs, Jr. Smith contends that an instructed verdict against him was improper because the evidence raised fact issues regarding his liability on the debt, his entitlement to damages for his counterclaims, his entitlement to notice of a foreclosure, and the United States Bank of Galveston's liability under Tex.Bus. & Com.Code Ann. § 17.45, et seq. (Vernon 1987), the Deceptive Trade Practices Act. Scruggs, Jr. is not participating in this appeal. We find no error and affirm.

In July of 1983, Community National Bank of Friendswood loaned $46,000.00 to Chester Scruggs, Jr. to repay creditors who threatened foreclosure on the Scruggs family's former homestead property. To secure the loan, Scruggs, Jr. signed a real estate lien note granting Community National Bank a first lien on the Scruggs property. Smith, an attorney representing Scruggs, signed the note as guarantor.

About February 24, 1984, United States Bank of Galveston settled a claim in a bankruptcy proceeding against Chester Scruggs, Sr. The settlement agreement provided for repayment of the father's debt of approximately $64,000.00 to United States Bank of Galveston, secured by a second lien on the Scruggs property. United States Bank was aware that Community National Bank held the first lien.

Scruggs, Jr. defaulted on his loan at Community National Bank. Community National Bank then advised United States Bank of its intention to foreclose its first lien on the Scruggs property. To protect its second lien position, United States Bank purchased Scruggs, Jr.'s promissory and real estate lien notes, including Smith's guarantee, from Community National Bank. United States Bank then held both the first and the second lien on the Scruggs property. When Scruggs, Jr.'s father defaulted on his debt secured by the second lien, United States Bank posted notice of foreclosure on the second lien and purchased the Scruggs property at the trustee's sale.

In reviewing an instructed verdict, we determine whether any evidence of probative force exists to raise a fact issue on a material question presented. We consider all of the evidence in the light most favorable to the party against whom the verdict was instructed, disregarding all contrary evidence and inferences. *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978). If reasonable minds may differ as to the truth of the controlling facts, an instructed verdict is improper and the issue must go to the jury. *Id.* Thus, we review Smith's points of error to determine if the evidence, viewed in the light most favorable to Smith, raised any fact issue.

Smith contends that the doctrine of merger of liens applies to these facts. Smith argues that since United States Bank held both the first lien and the second lien on the Scruggs property, the liens merged. Then, he maintains, when United States Bank foreclosed on the second lien, the first lien was extinguished because it had been previously merged with the second, and the debt underlying the first lien was also extinguished. Therefore, Smith argues, he cannot be liable as a guarantor since Scruggs, Jr.'s debt no longer exists. We find this position unpersuasive for several reasons.

Smith failed to plead the doctrine of merger. Tex.R.Civ.P. 94 requires a party to set forth affirmative defenses and any other matters constituting an avoidance. Smith's theory of merger is a matter constituting an avoidance of his guarantor's agreement and therefore should have been pled. Generally, the rules of pleading are liberally construed. *See Roark v. Allen*, 633 S.W.2d 804 (Tex.1982). However,

matters not presented to the trial court in pleadings, written motions, answers, or other responses cannot be considered on appeal as a ground for reversal. *State v. J.M. Huber Corporation*, 145 Tex. 517, 199 S.W.2d 501, 502 (1947); *Texas State Bank of Austin v. Sharp*, 506 S.W.2d 761, 765 (Tex.Civ.App.–Austin 1974, writ ref'd n.r. e.). We cannot properly render judgment on the basis of an affirmative defense which was not urged in the trial court. *Neeley v. Southwestern Investment Company*, 430 S.W.2d 465, 469 (Tex.1968). Since the defense of merger was not presented to the trial court, it was waived.

■ Moreover, even if Smith had properly presented the defense of merger to the trial court, it is inapplicable in this situation. Merger is the absorption or extinguishment of one estate or contract in another, and is largely a question of intent. *Caprito v. Grisham–Hunter Corporation*, 128 S.W.2d 149, 154 (Tex.Civ.App.–Eastland 1939, writ dism'd, judgmt cor.). Generally, when one acquires fee simple title to land, all prior liens, inferior titles and interests owned by him are merged into a superior title, unless a different intent is shown. However, mergers are not favored and will not be decreed when inconsistent with the evident intent of the parties. *See State v. Moak*, 146 Tex. 322, 207 S.W.2d 894 (1948); *Caprito v. Grisham–Hunter Corporation*, 128 S.W.2d at 154. Also, equity will not decree the merger of estates when it would be disadvantageous to the person acquiring both interests. *Id.* A lien on land is not necessarily extinguished by the lienholder's acquisition of title to the land, and hence, when the evidence shows that it was in the interest of the owner that both estates remain separate, the law presumes an intent corresponding with such an interest. *See Coleman v. Looney*, 83 S.W.2d 1061, 1063 (Tex.Civ.App.–Fort Worth 1935, writ dism'd).

■ Evidence exists of United States Bank's purpose in purchasing the first lien. May Ainslie, executive vice-president of United States Bank and manager of its lending department, testified that United States Bank purchased Scruggs, Jr.'s

promissory note, Smith's guarantee, and the first lien on the Scruggs property from Community National Bank in order to protect its second lien position. This testimony evidences United States Bank's intent to keep the liens separate and to collect on both underlying debts. We conclude that merger of the liens did not occur and that Scruggs, Jr.'s debt was not extinguished.

■ Smith also asserts that the trial court erred in instructing a verdict against him on his counterclaims of breach of constructive trust and impairment of subrogation and equity of redemption rights. Smith signed a guaranty agreement which provides in pertinent part:

[United States] Bank may, at its option, at any time *without the consent of or notice to the Undersigned, without incurring responsibility to the Undersigned, without impairing or releasing the Obligations of the Undersigned ...* sell, exchange, release, surrender, realize upon or otherwise deal with in any manner and in any order any property at any time pledged or mortgaged to secure or securing the liabilities hereby guaranteed.... (Emphasis added).

We conclude that Smith waived his impairment of subrogation and equity of redemption rights in the guaranty agreement. The language in the guaranty agreement is clear and unequivocal. *See First Bank of Houston v. Bradley*, 702 S.W.2d 683, 686 (Tex.App.—Houston [14th Dist.] 1985, no writ); *Lawyers Title Ins. v. Northeast Texas Devel.*, 635 S.W.2d 897, 899 (Tex.App.—Tyler 1982, writ ref'd n.r.e.).

■ Regarding his counterclaim for breach of constructive trust, Smith did not brief an argument or in any manner tell this Court how the theory of constructive trust applies to this case. He cites no authority allowing him recovery under a breach of constructive trust theory. Tex. R.App.P. 74(f)(2) requires argument in an appellate brief to include "such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue." It has long been held that a point of error not in minimal compliance with the briefing rules is waived. *See, e.g., Ben-*

*ham v. Benham,* 726 S.W.2d 618 (Tex.App.—Amarillo 1987, writ ref'd n.r.e.); *Ranger Ins. Co. v. Rogers,* 530 S.W.2d 162 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.); *Burdette v. Culp,* 410 S.W.2d 843 (Tex.Civ.App.—El Paso 1967, no writ); *Tasin v. Reed,* 212 S.W.2d 958 (Tex.Civ.App.—San Antonio 1948, no writ).

However, in *Inpetco, Inc. v. Texas American Bank/Houston N.A.,* 729 S.W.2d 300 (Tex.1987), the Supreme Court indicated its disapproval of the conclusion that a point not briefed and argued in compliance with Tex.R.App.P. 74 is waived. Further, the court instructed that Tex.R.App.P. 74, which sets forth the requirements of an appellate brief, should be read in conjunction with Tex.R.App.P. 83, which allows for the correction of certain defects or irregularities in appellate procedure. The Supreme Court concluded that when a party fails to comply with the briefing requirements of Tex.R.App.P. 74, the proper remedy is to require him to rebrief. *See Inpetco,* 729 S.W.2d at 300.

■ We believe that *Inpetco* should be construed to allow rebriefing in those instances where a point is so generally briefed, in such a careless or cursory manner, that an appellate court cannot ascertain the argument. It does not necessarily follow that in all instances in which a point is raised and not briefed at all that an appellate court should be compelled to order rebriefing. Where there is no discussion of the facts and authorities relied upon, the court has no duty to independently search the statement of facts to ascertain if a point has merit. *Anderson v. Higdon,* 695 S.W.2d 320 (Tex.App.—Waco 1985, writ ref'd n.r.e.); *Furr v. Hall,* 553 S.W.2d 666 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). Smith has fully and thoroughly briefed all of his other points of error. In this case, to order that the case be rebriefed on the constructive trust point does not appear judicially economical, nor fair to the other parties. Under the circumstances here, we conclude that the point of error should be deemed to have been waived.

Without citing authority, Smith also complains that the trial court erred in ruling that he was not entitled to notice of foreclosure of the second lien. Tex.Prop.Code Ann. § 51.002(b) (Vernon Supp.1989) provides that notice of a foreclosure sale must be given at least twenty-one days before the date of the sale to each debtor who, according to the records of the holder of the debt, is obligated to pay the debt. The trial court correctly determined that Smith guaranteed Scruggs, Jr.'s debt, not Scruggs, Sr.'s, which was the subject of the foreclosure. Smith was not entitled to personal notice of the foreclosure sale, because he is not obligated to pay Scruggs, Sr.'s debt.

■ Smith additionally contends that the trial court erred in not finding United States Bank liable under Tex.Bus. & Com. Code Ann. § 17.45, the Deceptive Trade Practices Act. For United States Bank to be liable, its customer, Scruggs, Jr., must meet the definition of a consumer who is acquiring a good or service.

Money is not a good, and is therefore excluded from the Deceptive Trade Practices Act. One who seeks only money in a transaction is not a consumer under the Act, there being a clear legislative intent that the extension of credit was not to be covered. *Riverside Nat. Bank v. Lewis,* 603 S.W.2d 169 (Tex.1980).

Smith testified that he helped to obtain a loan on behalf of Scruggs, Jr. to pay off the original lienholder of the Scruggs property. Since Scruggs, Jr.'s objective was not to purchase a good or service, but rather to gain an extension of credit to pay off a debt, Smith is not a consumer under the Act; therefore, the Act is inapplicable to the transaction.

AFFIRMED.