890 S.W.2d 493 (1994)
VINMAR, INC., f/k/a Vinmar Impex, Inc., Appellant,
v.
HARRIS COUNTY APPRAISAL DISTRICT and Harris County Appraisal Review Board, Appellees.
No. 08-93-00294-CV.
Court of Appeals of Texas, El Paso.
November 23, 1994.
Rehearing Overruled January 18, 1995.
*494 Sharon E. Beck, James J. Sentner, Jr., Haight, Gardner, Poor & Havens, Houston, TX, Robert M. Smolens, Haight, Gardner, Poor & Havens, New York City, for appellant.
*495 Kenneth Wall, Olson & Olson, Houston, TX, for appellees.
Before KOEHLER, LARSEN and McCOLLUM, JJ.

OPINION
McCOLLUM, Justice.

NATURE OF THE CASE
This is a property tax review case. The case was tried on agreed facts, pursuant to TEX.R.CIV.P. 263. The trial court rendered a take nothing judgment against Appellant. In two points of error, the Appellant challenges the assessment of Harris County property taxes on material destined for export under the Commerce Clause[1] and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. We affirm.

SUMMARY OF THE EVIDENCE
This case was tried on an agreed statement of facts pursuant to TEX.R.CIV.P. 263. What follows is a summary of the relevant agreed facts. Appellant is a Texas corporation with its principal place of business in Houston, Texas. Appellant's business consists of purchasing quantities of plastic resin for export to foreign customers. The transactions underlying the exports consists of two parts: (1) Appellant contracts with a foreign corporation to provide resin; and (2) Appellant purchases resin on the open market to meet its prior contractual obligation. After Appellant purchases resin for export, it seeks the foreign import clearances, currency clearances, and letters of credit necessary to complete the transaction. On January 1 of 1989 and 1990, certain lots of resin were present in Appellant's Houston warehouse, awaiting the approvals necessary to complete the transaction; the taxes challenged were assessed on those lots.

DISCUSSION
Appellant's first contention is that the tax assessed on the resins awaiting foreign regulatory approval before export violates the Commerce Clause of the United States Constitution. See U.S. CONST. art. I, § 8, cl. 3 ("Congress shall have Power ... To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes....").
Absent Congressional action, the Commerce Clause, known then as the "dormant Commerce Clause," operates by its own force as a limitation on the power of the states to regulate interstate and foreign commerce. E.g., Barclays Bank PLC v. Franchise Tax Board of California, 512 U.S. ___, ___ n. 9, 114 S.Ct. 2268, 2276 n. 9, 129 L.Ed.2d 244, 257 n. 9 (1994); Wardair Canada, Inc. v. Florida Dep't of Revenue, 477 U.S. 1, 7, 106 S.Ct. 2369, 2372, 91 L.Ed.2d 1, 9 (1986); Boston Stock Exchange v. State Tax Comm'n, 429 U.S. 318, 328-29, 97 S.Ct. 599, 606, 50 L.Ed.2d 514, 523-24 (1977). Historically, the Supreme Court has held that the Commerce Clause precluded state and local taxation of goods in transit in interstate and foreign commerce, although taxation was not prevented before interstate movement began, and when interstate movement ended. Minnesota v. Blasius, 290 U.S. 1, 10, 54 S.Ct. 34, 37, 78 L.Ed. 131, 136 (1933); Heisler v. Thomas Colliery Co., 260 U.S. 245, 259, 43 S.Ct. 83, 86, 67 L.Ed. 237, 243 (1922); Coe v. Town of Errol, 116 U.S. 517, 525, 6 S.Ct. 475, 477, 29 L.Ed. 715, 718 (1886). And, if the movement was interrupted for convenience or safety, for "transit reasons," the goods remained immune from taxation, with the opposite result following where transportation was interrupted for the owner's business reasons. See Blasius, 290 U.S. at 10, 54 S.Ct. at 37, 78 L.Ed. at 136; Champlain Realty Co. v. Town of Brattleboro, 260 U.S. *496 366, 377, 43 S.Ct. 146, 149, 67 L.Ed. 309, 314 (1922); Calvert v. Zanes-Ewalt Warehouse, Inc., 502 S.W.2d 689, 692 (Tex.1973).
In 1977, the United States Supreme Court, specifically overruling prior decisions which had held that state taxation of the privilege of doing business in interstate commerce is a per se violation of the Commerce Clause, established four criteria for judging the validity of a state tax on interstate commerce, holding that a tax does not run afoul of the Commerce Clause if: (i) the activity taxed has a substantial nexus with the taxing state, (ii) the tax does not discriminate against interstate commerce, (iii) the tax is fairly apportioned, and (iv) the tax is fairly related to the services provided by the taxing state. Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326, 331 (1977). In 1979, the Supreme Court held that a state tax on foreign commerce must satisfy two additional criteria. Japan Line, Ltd. v. County of Los Angeles, 441 U.S. 434, 446-48, 99 S.Ct. 1813, 1820-21, 60 L.Ed.2d 336, 346-47 (1979). First, the tax must not create a "substantial risk of international multiple taxation." Second, the tax must not prevent "the Federal Government from `speaking with one voice when regulating commercial relations with foreign governments.'" Japan Line, 441 U.S. at 446-48, 99 S.Ct. at 1820-21, 60 L.Ed.2d at 346-48. See also Wardair Canada, Inc., 477 U.S. at 8, 106 S.Ct. at 2373, 91 L.Ed.2d at 9; County of Harris v. Xerox Corp., 619 S.W.2d 402, 407 (Tex.Civ.App.Houston [1st Dist.] 1981), rev'd on other grounds, 459 U.S. 145, 103 S.Ct. 523, 74 L.Ed.2d 323 (1982); Jet Fleet Corp. v. Dallas County Appraisal Dist., 773 S.W.2d 744 (Tex.App.Dallas 1989, no writ).
The applicable standard is therefore a combination of the Complete Auto criteria and the Japan Line criteria, as illuminated by the progeny of those cases. Barclays Bank, 512 U.S. at ___, 114 S.Ct. at 2276, 129 L.Ed.2d at 258; Itel Containers Int'l Corp. v. Huddleston, 507 U.S. ___, ___, 113 S.Ct. 1095, 1103, 122 L.Ed.2d 421, 435 (1993); Diamond Shamrock Refining and Marketing Co. v. Nueces County Appraisal Dist., 876 S.W.2d 298, 301 (Tex.1994). However, since the Supreme Court changed its analysis of Commerce Clause issues in Complete Auto, it does not appear to have addressed an in transit taxation of goods in interstate or foreign commerce. Accordingly, we must examine the newer guiding cases to determine if the result of the older cases, holding in transit taxation of goods in interstate or foreign commerce barred by the Commerce Clause, has changed.
Appellant's argument is that the goods taxed were in transit in foreign commerce, and therefore not subject to the Harris County property tax. In decisions prior to Complete Auto, this was clearly the rule. E.g., Independent Warehouses, Inc. v. Scheele, 331 U.S. 70, 72-73, 67 S.Ct. 1062, 1064-65, 91 L.Ed. 1346, 1352-53 (1947); Blasius, 290 U.S. at 8-9, 54 S.Ct. at 36-37, 78 L.Ed. at 135-36. The Blasius Court stated:
The states may not impose direct burdens upon interstate commerce; that is, they may not regulate or restrain that which from its nature should be under the control of the one authority and be free from restriction save as it is governed in the manner that the national legislature constitutionally ordains. This limitation applies to the exertion of the state's taxing power as well as to any other interference by the state with the essential freedom of interstate commerce. Thus, the states cannot tax interstate commerce, either by laying the tax upon the business which constitutes such commerce or the privilege of engaging in it, or upon the receipts, as such, derived from it. Similarly, the states may not tax property in transit in interstate commerce.
Blasius, 290 U.S. at 8-9, 54 S.Ct. at 36-37, 78 L.Ed. at 135 (footnotes omitted). This statement comports with the trend in Commerce Clause philosophy asserting the Commerce Clause created a zone of "free trade" immune from state power. See Complete Auto, 430 U.S. at 278, n. 7, 97 S.Ct. at 1079 n. 7, 51 L.Ed.2d at 330 n. 7. The "free trade" view of the Commerce Clause, however, has not prevailed in the Supreme Court's refinement of Commerce Clause jurisprudence. See Complete Auto, 430 U.S. at 288-89, 97 S.Ct. at 1083-84, 51 L.Ed.2d at 336-37. Rather, it is now firmly established that "interstate *497 commerce may be required to pay its fair share of state taxes." E.g., D.H. Holmes Co., Ltd. v. McNamara, 486 U.S. 24, 31, 108 S.Ct. 1619, 1623, 100 L.Ed.2d 21, 27 (1988); Japan Line, 441 U.S. at 444, 99 S.Ct. at 1819, 60 L.Ed.2d at 345; Department of Revenue of Washington v. Association of Washington Stevedoring Cos., 435 U.S. 734, 750, 98 S.Ct. 1388, 1399, 55 L.Ed.2d 682, 697 (1978). Therefore, the "in transit" exemption from state taxation for goods in interstate commerce, grounded on the "free trade" view of the Commerce Clause, would appear to be a nullity following the Supreme Court's decisions in Complete Auto and its progeny.
We will now examine the tax imposed to determine if it complies with the standards enumerated by the Supreme Court pursuant to the current view of the Commerce Clause. As discussed above, state taxes affecting foreign commerce must meet these criteria: (i) there must be a "substantial nexus" between the activity taxed and the taxing state; (ii) the tax cannot discriminate against interstate commerce; (iii) the tax must be fairly apportioned; (iv) the tax must be fairly related to the services provided by the taxing state; (v) the tax must not substantially increase the risk of international multiple taxation; and (vi) the tax must not prevent the Federal government from speaking with "one voice" in regulating foreign commerce. Appellant, as the taxpayer, has the burden of clearly establishing its Commerce Clause immunity from the tax assessed by the local authorities. See Container Corp. of Am. v. Franchise Tax Bd., 463 U.S. 159, 175-76, 103 S.Ct. 2933, 2945-46, 77 L.Ed.2d 545, 560 (1983); Norton Co. v. Department of Revenue of State of Illinois, 340 U.S. 534, 537-38, 71 S.Ct. 377, 380, 95 L.Ed. 517, 521 (1951).

Nexus
A state tax affecting interstate commerce violates the Commerce Clause unless there is a "substantial nexus" between the activity taxed and the taxing state. Complete Auto, 430 U.S. at 279, 97 S.Ct. at 1079, 51 L.Ed.2d at 331. Further development of the "substantial nexus" criterion[2] indicates that it requires somewhat more contact with the taxing state than the "minimum contacts" Due Process requires for the exercise of personal jurisdiction. Quill Corp. v. North Dakota, 504 U.S. ___, ___, 112 S.Ct. 1904, 1913, 119 L.Ed.2d 91, 107 (1992). The activities of operating companies present and doing business in a forum are held to meet the "substantial nexus" standard. D.H. Holmes, 486 U.S. at 33, 108 S.Ct. at 1624, 100 L.Ed.2d at 29; National Geographic Society v. California Board of Equalization, 430 U.S. 551, 560-62, 97 S.Ct. 1386, 1392-93, 51 L.Ed.2d 631, 639-41 (1977). If the only contact with a taxing state is solicitation of customers by domestic mail, however, there is no "substantial nexus." Quill, 504 U.S. at ___, 112 S.Ct. at 1914, 119 L.Ed.2d at 108.
The agreed statement of facts shows that Appellant is a Texas corporation with its principle place of business in Houston, Texas. Appellant is in the business of procuring raw materials for foreign export. Appellant contracts with foreign companies to provide certain materials; then, Appellant purchases the materials from domestic suppliers. After purchase, the resins are shipped to Appellant's warehouse in Houston, where they sit pending import clearance, letters of credit, and currency control compliance. The "transaction" taxed is the presence of the resins within the boundaries of Texas. TEX.TAX CODE ANN. § 11.01(c) (Vernon 1992). We therefore hold that there is a "substantial nexus" between the presence of Appellant's property in a Houston, Texas, warehouse and the State of Texas. See D.H. Holmes, 486 U.S. at 33, 108 S.Ct. at 1624, 100 L.Ed.2d at 29; National Geographic Society, 430 U.S. at 560-62, 97 S.Ct. at 1392-93, 51 L.Ed.2d at 639-41.

Discrimination
A state tax affecting interstate commerce cannot discriminate against interstate commerce.[3] *498 Complete Auto, 430 U.S. at 279, 97 S.Ct. at 1079, 51 L.Ed.2d at 331. The tax statute at issue makes no distinction between property in the state permanently, and property moving through the state, see Tex.Tax Code Ann. § 11.01(c), except that if property is only in the state for a temporary period, it cannot be taxed. Id. § 11.01(c)(1). Any discrimination, therefor, would be in favor of commerce, by allowing goods "passing through" an exemption from property taxation. See id. § 11.01(c)(1). Of course, this exception applies only to property in the state "for a temporary period," and the agreed facts contain nothing showing Appellant would be entitled to this defense, had the defense been pleaded. Further, the agreed facts contain nothing indicating the tax statute has a discriminatory effect. Therefore, we hold the tax does not discriminate against interstate (or foreign) commerce.

Fair Apportionment
A state tax affecting interstate commerce must be fairly apportioned. Complete Auto, 430 U.S. at 279, 97 S.Ct. at 1079, 51 L.Ed.2d at 331. The agreed statement of facts contains no evidence that the tax is not fairly apportioned. We note, however, that this property tax is self-apportioning. See Japan Line, 441 U.S. at 445 n. 8, 99 S.Ct. at 1820 n. 8, 60 L.Ed.2d at 346 n. 8.[4] We hold that Appellant has failed to prove the tax is not fairly apportioned.

Fairly Related to Services Provided by the State
A state tax affecting interstate commerce must be fairly related to the services provided by the taxing state. Complete Auto, 430 U.S. at 279, 97 S.Ct. at 1079, 51 L.Ed.2d at 331. As developed by the Supreme Court, this criterion is easily satisfied. The provision by the state of fire and police services, roads, mass transit, and other civic services all benefit Appellant. See D.H. Holmes, 486 U.S. at 32, 108 S.Ct. at 1624, 100 L.Ed.2d at 28. Again, the agreed facts contain no evidence that the tax is not fairly related to benefits provided by the state. We hold that the tax is fairly related to the services provided by Texas.

The Risk of Multiple Taxation
A state tax affecting foreign commerce must not substantially increase the risk of international multiple taxation. Japan Line, 441 U.S. at 446, 99 S.Ct. at 1820, 60 L.Ed.2d at 346. Further development of this criterion indicates that the possibility of taxation by a foreign government is insufficient to invalidate the tax under the Commerce Clause. Itel Containers, 507 U.S. at ___, 113 S.Ct. at 1104, 122 L.Ed.2d at 436. It is also instructive that the Supreme Court vacated the judgment of the Houston First Court of Appeals which upheld a Commerce Clause challenge of the property tax assessed against shipping containers. Harris County Appraisal District v. Transamerica Container Leasing Inc., 821 S.W.2d 637 (Tex.App. Houston [1st Dist.] 1991, writ denied), vacated and remanded, ___ U.S. ___, 113 S.Ct. 1407, 122 L.Ed.2d 779 (1993). In Transamerica, the Court of Appeals upheld the challenge on the grounds that the agreed statement of facts supported an implied finding that the tax created a substantial risk of international multiple taxation. 821 S.W.2d at 640. The Supreme Court instructed the Court of Appeals to consider the case further[5] in light of Itel Containers. ___ U.S. ___, 113 S.Ct. 1407, 122 L.Ed.2d 779. Once again, the agreed facts in the case sub judice contain nothing indicating that the materials *499 concerned are taxed, or are subject to taxation, in foreign jurisdictions. We therefore hold that Appellant has failed to prove the tax substantially increases the risk of international multiple taxation.

"One Voice"
A state tax affecting foreign commerce must not prevent the Federal Government from "speaking with one voice" in regulating foreign commerce. Japan Line, 441 U.S. at 446, 99 S.Ct. at 1820, 60 L.Ed.2d at 347-48. This requires more than foreign effects; the tax must affect foreign affairs contrary to some Federal policy. Container Corp., 463 U.S. at 194, 103 S.Ct. at 2955, 77 L.Ed.2d at 571. The fact that the Federal government is prevented by some international agreement from imposing the same tax the state has imposed will not violate the "one voice" criterion. Barclays Bank, 512 U.S. at ___, 114 S.Ct. at 2283, 129 L.Ed.2d at 265-66. Only "specific indications of congressional intent" to bar a state action will suffice to bar that action as a violation of Congress' "one voice." 512 U.S. at ___, 114 S.Ct. at 2283, 129 L.Ed.2d at 266. The agreed facts contain no evidence the taxes imposed prevent the Federal Government from speaking with one voice in foreign affairs. We hold that Appellant has failed to prove the taxes violate the "one voice" criterion.
Because Appellant has not met its burden of proving the tax fails one of the six criteria applicable to state taxes affecting foreign commerce, its challenge to the Harris County property tax pursuant to the Commerce Clause of the United States Constitution must fail. Appellant's Point of Error No. One is overruled.

Other Constitutional Arguments
Appellant's second point also complains that the trial court erred in finding that the taxes assessed by Appellees were not unconstitutional. Point of Error Two references numerous provisions of the United States and Texas constitutions, yet the only provision briefed, argued, and to which an authority is cited, is that grounded on the Equal Protection clause of the United States Constitution, thus all other grounds are waived. TEX.R.APP.P. 74(f); Teague v. Bandy, 793 S.W.2d 50, 58 (Tex.App.Austin 1990, writ denied).[6]

Equal Protection
In reviewing Equal Protection challenges of classifications which do not impinge on some fundamental right, or which do not involve classifications which are inherently invidious, a state statute will be upheld when it is rationally related to the achievement of a legitimate government end. G.D. Searle & Co. v. Cohn, 455 U.S. 404, 408, 102 S.Ct. 1137, 1141, 71 L.Ed.2d 250, 256 (1982). The agreed statement of facts contains no evidence showing the statute is not rationally related to a legitimate government end. Appellant argues that Harris County Appraisal District's determination that certain lots of resins held by Appellant were received via "title transfer" was arbitrary and capricious, and therefore violative of the Equal Protection Clause. Appellant cites Allegheny Pittsburgh Coal Co. v. County Comm'n of Webster County, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989), in support of its argument. Allegheny Pittsburgh involved a challenge to a real property tax scheme on Equal Protection grounds. The Supreme Court there found that the tax violated Equal Protection, because the taxing authority discriminated against property recently sold and the taxpayer's only state law remedy was to seek increases in the tax assessments for undervalued neighboring property. 488 U.S. at 346, 109 S.Ct. at 639, 102 L.Ed.2d at 699. Appellant, however, was entitled to seek trial de novo of the Harris County Appraisal District's determination, Tex.Tax Code Ann. § 42.43 (Vernon 1992), and in fact used this remedy, leading to this appeal. Even if we assume an erroneous determination, Appellant directs us to no authority sustaining an Equal Protection challenge based on an erroneous fact determination, and we can find *500 none. We hold Appellant has failed to prove the Tax statute, or its application, violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Appellant's Point of Error No. Two is overruled.
Having overruled all of Appellant's points of error, we affirm the judgment of the trial court.
NOTES
[1] We note that the Supreme Court of Texas has granted writ of error in another property tax case from Houston with essentially identical facts to the case sub judice. See Harris County Appraisal District v. Virginia Indonesia Co., 871 S.W.2d 864 (Tex.App.Houston [14th Dist.] 1994, writ granted). The Houston Fourteenth Court of Appeals in Virginia Indonesia held that the Commerce Clause does not bar property taxation of goods awaiting export approval. Id. at 870. The Supreme Court granted writ specifically on the grounds of the Commerce Clause challenge, as well as an Import Export Clause challenge and a state law question. 37 Tex.Sup.Ct.J. 1199, 1199-1200 (Sep. 10, 1994).
[2] Development of this criterion is limited, because this factor is usually assumed or agreed. E.g., Itel Container Corp., 507 U.S. at ___, 113 S.Ct. at 1104, 122 L.Ed.2d at 436; Japan Line, 441 U.S. at 445-46, 99 S.Ct. at 1820, 60 L.Ed.2d at 350.
[3] It is unclear to this Court why this criterion is not stated "the tax cannot discriminate against foreign commerce" when the challenge is made pursuant to the foreign commerce provision of the Commerce Clause. The Supreme Court states the criterion in this fashion, however, and so we apply it that way.
[4] If we assume each lot of material Vinmar purchases for resale remains in Houston for thirty days, the amount of material present any specific day is approximately 30/365 of the total entering the state each year. By taxing the whole value of 30/365 of Vinmar's material, the tax is effectively apportioned to 30/365 of the value of all Vinmar's material present during a tax year. Japan Line, 441 U.S. at 445 n. 8, 99 S.Ct. at 1820 n. 8, 60 L.Ed.2d at 346 n. 8.
[5] The case has remained in submission since March 10, 1993.
[6] See also Smith v. United States Nat'l Bank of Galveston, 767 S.W.2d 820, 824 (Tex.App.Texarkana 1989, writ denied); Connors v. Connors, 796 S.W.2d 233, 236-37 (Tex.App.Fort Worth 1990, writ denied).