Patricia ROACH, Appellant,

v.

M.J. DICKENSON, Appellee.

No. 11–00–00155–CV.

Court of Appeals of Texas,
Eastland.

July 5, 2001.

Rehearing Overruled Aug. 2, 2001.

Isaac M. Castro, Jeffrey S. Davis, Castro & Davis, Hamlin, for Appellant.

Forrest McCray, Gravely, Wheeler, McCray & Leggett, Abilene, for Appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

Opinion

McCALL, Justice.

M.J. Dickenson sued Patricia Roach for foreclosure of two liens against Roach's airplane, one for $8,000 (the first lien) and one for $8,900 (the second lien). Roach filed a counterclaim against Dickenson for, among other things, breach of a contract

to purchase the airplane from Roach.[1] After a bench trial, the trial court entered judgment against Roach for $16,900, foreclosed the liens and ordered the plane sold, and awarded $3,500 to Dickenson in attorney's fees. Roach argues in five issues on appeal that: (1) the trial court erred in granting judgment in favor of Dickenson for $16,900; (2) the trial court erred in failing to grant judgment in favor of Roach on her counterclaim for breach of contract; (3) the trial court erred in ordering foreclosure; (4) the trial court erred in awarding Dickenson attorney's fees; and (5) the trial court erred in failing to award Roach attorney's fees. We reverse and render in part and reverse and remand in part.

### Standards of Review

Roach argues in her first three issues that the evidence is legally insufficient to support the trial court's judgment. She contends that the evidence conclusively establishes that she and Dickenson entered into a contract for Dickenson to buy the plane and that Dickenson forgave the debt represented by the first lien as part payment for the plane. She also argues that the debt represented by the second lien arose after Dickenson purchased the plane.

■■■ The standards that apply to a review of jury findings also apply to findings made by the trial court after a bench trial. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). To review the legal sufficiency of the evidence, the appellate court must consider all the evidence in the light most favorable to the prevailing party and must indulge every reasonable inference in favor of the prevailing party. *Associated Indemnity Corporation v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex.

1998); *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997); *Harbin v. Seale*, 461 S.W.2d 591, 592 (Tex. 1970). Any evidence supporting the finding that is of probative value and that is more than a scintilla is legally sufficient to uphold the finding. *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex.1996); see *Merrell Dow Pharmaceuticals, Inc. v. Havner*, supra.

■■■ Roach had the burden of proof on her counterclaim for breach of contract. Her challenge to the sufficiency of the evidence to support a judgment against her counterclaim is a "matter of law" challenge. To review a "matter of law" challenge, the court must first examine the record to determine whether there is any evidence to support the challenged finding. If there is no evidence to support the finding, then the court must determine whether there is evidence to support the opposite finding. If there is any evidence of probative force to support the challenged finding, then the "matter of law" challenge must fail. *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982). Roach raised an affirmative defense to the first lien; therefore, her challenge to the sufficiency of the evidence to support a judgment against her on the first lien is also a "matter of law" challenge. Because Roach did not have the burden of proof regarding the second lien, her challenge to the sufficiency of the evidence to support a judgment against her on the second lien is a "no evidence" challenge. She bears the burden of showing that no probative evidence exists in the record to support the challenged findings. *Croucher v. Croucher*, 660 S.W.2d 55 (Tex.1983).

---

1. Roach also filed counterclaims for slander of title, for a declaratory judgment that the liens were extinguished by Dickenson's purchase of the plane, and for an injunction against Dickenson. She does not raise those causes of action on appeal.

## The Evidence

Roach purchased the plane in April of 1994. Dickenson helped Roach locate the plane. Roach purchased it for the use of Leon Wheeler, who acted as her agent at all times pertinent to the case. Roach and Wheeler planned to use the plane for crop dusting. The plane did not have an engine in it when Roach purchased it. It also needed a large amount of repair work. Dickenson, who had known Wheeler for several years, installed a new engine and repaired the plane. On November 14, 1994, Dickenson filed the first lien against the plane with the Federal Aviation Administration (FAA) in Oklahoma City.

Wheeler flew the plane until July 1995, when the engine failed and when he had to crash-land in a wheat field near Wichita Falls. In August 1995, Wheeler and Dickenson moved the plane to a hangar at Stamford, and Dickenson began to repair the engine and the damage caused by the landing. He worked on the plane intermittently between August 1995 and May 1996. On June 13, 1996, Dickenson wrote the following and gave it to Wheeler:

6–13–96

Contract for Sale of CALL–AIR 7792U less propeller—

TO, M.J. Dickenson.

Sale $9,000. paid $750. down.

Balance = $8,250.—I agree to pay minimum payment of $3,000. per year. Balance due for remainder of 1996 is $2250.

If you want to do this cash the check for $750. dated 6–13–96.

/s/ M.J. Dickenson

witness: /s/ Leon Wheeler

---

Dickenson also gave Wheeler a check made payable to Roach in the amount of $750. He wrote "Down payment on 7792U 9,000—750 = 8,250. Bal." on the memo line. Roach deposited the check on June 14, 1996.

Dickenson testified that the actual purchase price for the plane was $17,000 but that he and Wheeler agreed that he would forgive the amount secured by the first lien as part payment. Dickenson and Wheeler agreed that the first installment under the contract would be due in January 1997. Dickenson testified that "I did tell [Wheeler] when we made that agreement that I had to have a bill of sale as soon as possible." In January 1997, Dickenson visited Roach and Wheeler at their home in Austin. Dickenson asked Roach for a bill of sale on the plane so that he could record his ownership with the FAA and fly the plane. Roach and Wheeler refused to give Dickenson a bill of sale unless he filed a release of the first lien with the FAA and gave them a security interest in the plane. Dickenson refused to file a release of the first lien with the FAA unless he received a bill of sale.

On January 22, 1997, Dickenson filed the second lien with the FAA against the plane for the repairs done after the crash landing. Dickenson testified that "[t]he major part of [the work] was finished in May

of '96." The evidence showed, and Dickenson testified, that he paid for and installed the repaired turbocharger in January 1997. The FAA form stated that the work represented by the second lien was completed on "12–15–96." On September 16, 1997, Roach mailed the following to Dickenson: "Due to nonpayment return the airplane N7792U or send $8,250.00, plus the prop, by return mail." Dickenson filed suit to foreclose the liens on June 25, 1998; he retained possession of the aircraft at all times since June 13, 1996.

### Analysis

This case presents two questions. First, we must determine whether Roach and Dickenson entered into a contract for Dickenson to purchase the plane. Second, we must determine whether the liens on the plane and the debt underlying them remained viable against Roach.

■ With regard to the first question, it is elementary contract law that a valid contract requires a meeting of the minds, an offer and an acceptance. The contract in this case consists of Dickenson's hand-written offer for the purchase of the plane. The offer clearly states that Roach may accept the terms by cashing Dickenson's check. The offer requires no other act for acceptance. The evidence shows that Roach cashed the check the next day; therefore, a contract was formed.

■ Regardless of whether the FAA required a certain document of title for Dickenson to fly the plane, Dickenson received title to the plane when Roach accepted the contract and when Dickenson took possession of the plane. TEX. BUS. & COM. CODE ANN. § 2.401(b) (Vernon 1994); *Hudson Buick, Pontiac, GMC Truck Company v. Gooch*, 7 S.W.3d 191, 197 (Tex. App.—Tyler 1999, pet'n den'd)(title to car passed when buyer took possession, even though requirements of the Certificate of Title Act were not fulfilled); *Hartley v. Coker*, 843 S.W.2d 743, 749 (Tex.App.—Corpus Christi 1992, no writ)(title to plane passed even though purchase agreement stated that seller would be "record owner" until price paid in full); *Miles v. Starks*, 590 S.W.2d 223, 225 (Tex.Civ.App.—Fort Worth 1979, writ ref'd n.r.e.), *cert. den'd*, 449 U.S. 875, 101 S.Ct. 217, 66 L.Ed.2d 96 (1980); *S.A. Stone & Co. v. Davis & Moore*, 175 S.W. 772, 773 (Tex.Civ.App.—Austin 1915, no writ). The delivery of a bill of sale was not a condition for the formation of the contract, nor was such a delivery necessary for Dickenson to purchase or own the plane. The evidence conclusively establishes that the parties formed a contract; Dickenson did not deny that he failed to make any of the required payments under the contract. The trial court erred in failing to render judgment for Roach on her counterclaim for breach of contract.

The question of the liens requires a more involved answer. Any person who performs repair or maintenance work on a plane receives a statutory lien against the plane for the reasonable and usual compensation for the work. TEX. PROP. CODE ANN. § 70.301(a) (Vernon Supp. 2001). Roach argues that the evidence shows that Dickenson forgave the first lien debt and that the second lien represents repairs made after Dickenson purchased the plane. We agree in part.

Although Dickenson testified that the purchase price for the plane was $17,000 and that he forgave the first lien debt to reduce the price to $9,000, the written contract does not reflect that agreement. It merely states a $9,000 purchase price. Roach, however, pleaded that Dickenson was estopped from enforcing the first lien because it "terminated and was extinguished" upon the purchase of the plane. Roach's pleading raised the affirmative de-

fense of merger as to the first lien. See TEX.R.CIV.P. 94; *Smith v. United States National Bank of Galveston*, 767 S.W.2d 820, 822 (Tex.App.—Texarkana 1989, writ den'd). With regard to the second lien, Roach only pleaded that Dickenson was estopped from enforcing it because it arose after Dickenson purchased the plane. Thus, Roach cannot rely on merger to defeat Dickenson's claims arising from the second lien. See *State v. J.M. Huber Corporation*, 145 Tex. 517, 199 S.W.2d 501, 502 (1947).

■ The fact that Dickenson acquired ownership of the entire plane did not automatically merge the lesser lien interest into the greater ownership interest. *Smith v. United States National Bank of Galveston, supra* at 823; *Caprito v. Grisham–Hunter Corporation*, 128 S.W.2d 149, 154 (Tex.Civ.App.—Eastland 1939, writ dism'd, judgm't cor.). Even though Roach pleaded merger, the evidence must show that the parties intended the sale of the entire plane to extinguish the debt obligation represented by the first lien. *Smith v. United States National Bank of Galveston, supra*; *Caprito v. Grisham–Hunter Corporation, supra*. Dickenson's testimony that he forgave the first lien debt as part payment on the plane is sufficient to establish conclusively the defense of merger as to the first lien. The trial court erred in granting Dickenson judgment on the first lien and in foreclosing the first lien.

■ The second lien arose when Dickenson performed the second round of repairs on the plane. Even if Roach had pleaded merger as to the second lien, the record does not show that Dickenson intended to release the lien or to extinguish

the underlying debt when he purchased the plane. Dickenson testified that he offered to offset the second lien against the purchase price as well but that Wheeler and Roach wanted to receive some money from the sale. The record is unclear how much of the second lien represents work performed on the plane after Dickenson purchased it in June 1996. Dickenson testified that he paid for and installed the rebuilt turbocharger in January 1997. The lien recorded with the FAA states that the last work performed on the plane was completed in December 1996. The evidence is insufficient to support the trial court's enforcement of the entire second lien. Further evidence is required to determine how much of the second lien arose prior to Dickenson's purchase of the plane.

### *This Court's Ruling*

We sustain Roach's issues on appeal and reverse the judgment of the trial court. We render judgment for $8,250 plus 6 percent prejudgment interest[2] in favor of Roach on her breach of contract counterclaim against Dickenson. We remand the issue of whether attorney's fees should be awarded to Roach. We remand this cause to the trial court to determine what part of the second lien debt arose before Dickenson purchased the plane.

---

2. The trial court awarded Dickenson 10 percent prejudgment interest. Both parties agree that the correct amount is 6 percent.

See TEX. FIN. CODE ANN. § 302.002 (Vernon Supp.2001).